CLARENCE THURSTON *v*. FRANK BATCHELLOR.

November Term, 1926.

Present: WATSON, C. J., POWERS, SLACK, FISH, and MOULTON, JJ.

Opinion filed May 4, 1927.

*Evidence—Admissibility of Surveyor's Plan in Connection with His Testimony—Testimony as to Area of Irregular Piece of Land To Aid Jury Where Computation Difficult—Boundaries—Evidence That Line as Indicated by Survey Had Been Shown to Party—Cross-Examination—Harmless Error— Exception to Charge Must Point Out Error—Adverse Possession—Color of Title Not Necessary To Establish Adverse Possession—Maintenance of Fence as Giving Constructive Possession—Character of Fencing Requisite.*

1. In action of trespass under G. L. 6956, where parties traced title to common owners, and plaintiff claimed defendant had cut over line, location of which was in dispute, between their respective properties, plan, prepared by experienced surveyor from survey made of lot owned by defendant for one of his predecessors in title, *held* admissible, in connection with surveyor's testimony as to details of survey, to illustrate his testimony, against defendant's claim that survey was made on wrong division, as to which evidence was conflicting, thus making question whether survey was made on disputed area for jury.

2. Where property in question was not an exact rectangle, and to ascertain area would involve complicated mathematical calculation, court was within its authority in allowing witness, who was surveyor, to aid jury by testifying as to such area.

3. In an action of trespass under G. L. 6956, testimony that witness had shown line between lots in dispute, as indicated by certain survey, to defendant, *held* admissible against objection that survey was not made in division where lots were situated, where location of such survey, by reason of conflicting testimony, was for jury.

4. In such action, where witness for plaintiff on direct examination testified that he owned timber on disputed tract, exclusion on

cross-examination of question as to who in fact did own timber, *held* harmless.

5. Exception to court's instruction to jury, which fails to point out wherein charge was incorrect, does not properly raise any question which Supreme Court need consider.

6. In action of trespass under G. L. 6956, evidence of plaintiff's adverse possession of land on which wood and timber were cut, *held* insufficient to warrant submission of question to jury.

7. Color of title is not necessary to establish title by adverse possession, its office being to determine character of occupant's possession and to define its limits and extent..

8. Fence, so maintained as to indicate that occupant is claiming to it, has same operation in extending effects of acts of possession that color of title has, and gives constructive possession in same way.

9. Where one enters upon another's land and so fences it in as to indicate clearly to true owner and all others interested that he asserts dominion to that limit, he may acquire title thereto by adverse possession, though he was at start without color of title.

10. In such cases, it is not necessary that fence shall entirely enclose land, but is sufficient if it goes far enough toward enclosing land to mark extent of claim, and to be effective in establishing adverse possession it must appear that fence was erected and maintained for purpose of enclosing land as property of person who seeks to make adverse title thereto, and not for his convenience in occupation of other land.

ACTION OF TRESPASS under G. L. 6956 for wood and timber cut by defendant. Plea, general issue. Trial by jury at the March Term, 1926, Washington County, *Chase*, J., presiding. Verdict and judgment for the plaintiff. The defendant excepted. The opinion states the case. *Reversed and remanded.*

*John J. Wilson* and *H. C. Shurtleff* for the defendant.

*Fred B. Thomas* and *Burton E. Bailey* for the plaintiff.

FISH, J.    This is an action of trespass brought under G. L. 6956, for wood and timber cut by the defendant on a tract of land in the town of Roxbury drawn to the original right of John

Throop.    Each party traces his title to common owners, H. W. and C. C. Fields, whose interest in the land in question was set out on two executions dated October 26, 1872.    The defendant's title was set out on, one of the executions to Sylvester Tracy by the following description:    .

"A certain piece of land with the appurtenances thereof, situated and being in Roxbury off of the east end of the third division lot of land drawn to the original right of John Throop, containing 87½ acres to be run off on a parallel line with east line of said lot above mentioned."

The plaintiff's title was set out on the other execution to Luther G. Tracy by the following description:

"Containing 71 acres and bounded as follows, to wit: it being a part of the third division lot of land drawn to the original right of John Throop commencing at the northwest corner of the above named lot, and running east on the north line to same set off to Sylvester Tracy, thence south on the west line of land set off to Sylvester Tracy far enough to make 71 acres by running west to the west line of the lot a line parallel with the north line of said lot."

The claim of the plaintiff was that the defendant had cut over the line between the two tracts in question, and dispute was over the location of this line.    The defendant claimed the cutting had been done on his own land.

1.    The defendant excepted to the admission of the execution from which the plaintiff claimed to have derived his title on the ground that his deed had not been shown to contain any of the land described in the execution, and he tendered the transcript for the plaintiff to point out the evidence in this regard. This the plaintiff has done, but it is unnecessary to review the evidence or to restate the plaintiff's argument so apparent it is from the record that the plaintiff's land is the same that was set out on the execution objected to.

[1]    2.    The plaintiff introduced the deposition of Royal J. Flint, a surveyor of long experience in running lines in the vicinity of the land in question.    He testified that he made a survey on the Throop lot June 2, 1906, for G. R. Andrews, one of the defendant's predecessors in title, of the 87½-acre piece now owned by the defendant, and from his field notes had drawn a plan, which was attached to his deposition.    To the admission of this plan the defendant objected on the ground that there

was no evidence that this was a plan of the land described in the deeds. With the understanding that the plan and deeds would be connected by evidence to be offered by the plaintiff later in the trial the plan was admitted, the defendant saving an exception. Thereupon the deponent testified from his field notes that he began his survey from the north corner of the two Throop lots indicated on his plan by the figure 1, it being a corner marked by a stake and stones and pointed out by Walter Bigelow, that he then ran south 52 degrees east to a point about 6 feet north of Tracy's mowing—not measured—and then went to a stake and stones on the Braintree line claimed by Bigelow to be the corner of the Throop and Lyon lots; then ran 38 degrees east to intersect the first line which was found at 150 rods and marked 5 on the plan; that he then followed back on the line first run 91½ rods for the northwest corner of the Andrews' 87½-acre piece, which corner was on the upper side of a lumbering road near a spring and marked 3 on the plan; that he then ran south 38 degrees west to the Granville town line, where he made a corner of stake and stones on the south side of the road marked 4 on the plan; that when he turned at the point marked 3 on the plan, which he made the northwest corner of the Andrews lot, he soon came to Tracy's pasture fence which ran with the line some distance before it turned to the west; that he marked both the westerly and easterly lines of the Andrews piece by spotting trees in the lines with two spots and off the lines with one spot.

The deponent having testified that the lot immediately north of the Andrews lot was the Whitcomb lot and that its southeast corner was the corner of the Throop lot and the Lyon lot, the defendant claimed that his survey was in the second division and not in the third, and for this reason the plan was objected to. The plaintiff owned no land in the second division, and, if the survey was made therein, the plan was inadmissible. The defendant introduced a copy of an old plan in the town clerk's office in Roxbury which shows that in the lower tier of lots of that town, bordering on Granville and Braintree on the south, there are two Throop lots, one being in the third division and the other adjoining it on the east and being in the second division. According to this plan the Lyon lot lies east of the Throop lot in the second division and the Whitcomb lot north of it. If this plan is a correct plotting of the lots, the deponent

was mistaken when he testified that the Whitcomb lot was to the north of the lot which he had surveyed, and that the Lyon lot was to the east of it. But the old plan, if correct, did not make the Flint plan inadmissible for the purpose of illustrating the testimony of the deponent, for there was much evidence in the case that the Flint survey was on the Throop lot in question, and that the west line of the Andrews survey was the line in dispute.

The defendant introduced a plan of the two lots in dispute made by Arthur E. Winslow, a surveyor, in 1911, on which appears a line marked, "This line was run by Flint." This line is 11½ rods easterly of the east line of the 87½-acre lot as run by Winslow. If the Flint line marks the eastern boundary of the lot of the defendant, then the cutting was on the plaintiff's land, but, if the Winslow line is the east line of the defendant's lot, then the cutting was on his own land. The evidence was well-nigh conclusive that the survey of Flint was on the land in dispute. Merrill, one of the plaintiff's witnesses, went with Flint when he made the survey, and described it in general terms very much the same way as Flint described it, and G. R. Andrews, the owner of the 87½-acre lot was present, as was also Foster Tracy, the owner of the 71-acre lot. If there was any doubt that the survey was made on the disputed area, it was for the jury at least to say whether it was there or not and the admission of the Flint plan was not error.

[2] 3. It became material to show the number of acres in the Andrews lot by the Flint survey, and the plaintiff called a surveyor, who testified to the fact. To this testimony the defendant excepted on the ground that the witness had been asked to compute an area that any one could compute who was given the figures. The Andrews lot was not an exact rectangle according to the Flint survey, the two sides being of different lengths, and it is obvious that to obtain the exact area would involve a rather complicated mathematical calculation, and the court was well within its authority when it allowed the witness to aid the jury in making the computation. 2 Elliot Ev., § 1053; *Jordon v. Osgood*, 109 Mass. 457, 12 A. R. 731; *Farmers' Natl. Bank v. Kingsley*, 193 Iowa, 406, 186 N. W. 924.

[3] 4. A witness called for the plaintiff was allowed to testify, subject to exception, that he showed the line between the lots in dispute as indicated by the Flint survey to the defendant

in 1910 or 1912. The objection to this testimony was that there was no Flint line in the third division. We have already seen that the location of Flint survey, if in question, was for the jury. The objection was, therefore, without force.

[4]    5. The plaintiff testified that his father owned the timber on the disputed tract—a statement which he afterwards retracted. His father later became a witness, and testified that he owned the timber, and that he told Batchellor that he claimed to own to the "cold spring corner." In cross-examination he was asked who in fact did own the timber, and to its exclusion the defendant saved an exception. It is urged that the question should have been allowed, as it bore upon the interest of the witness. This claim was not made in the court below, but, be this as it may, if error was committed in excluding the question in cross-examination, it was harmless for the reason that the witness had already testified that he did own the timber.

[5]    6. The defendant took an exception to the charge of the court that the jury might well leave out of consideration evidence of any private understanding between the plaintiff and his father as to the ownership of the standing timber and treat the plaintiff's claim as including both land and timber, but did not point out wherein the charge was incorrect. The point was therefore not properly raised, and it need not be considered.

7. The court submitted to the jury the question of title by adverse possession of the land in dispute, to which the defendant saved an exception on the ground that there was no evidence warranting it. The case was tried by the plaintiff on the theory that the true line according to the deeds was the Flint line. The only evidence of any right by adverse possession to the land in dispute follows: Flint testified that after running up the east side of what is now the defendant's land 150 rods, and west 91½ rods to the northwest corner of the lot, he turned south at the point marked 3 on his plan, and soon came on Tracy's pasture fence "which ran with the line some distance before it turned to the west." Merrill, a witness for the plaintiff, testified that he was with Flint when he made his survey, and that there was a fence running southerly from the plaintiff's northeast corner, which they ran on 15 or 20 rods when it "ran off west the rest of the way through until it went down hill." This, he said, was a brush fence that he had known over 40 years, and that Foster Tracy and Luther Tracy had occupied

the pasture which the fence enclosed ever since he could remember; that this pasture joined their other land westerly from point 3 of the Flint plan, and that there was always a passage way from the pasture on the Luther Tracy farm (which lies north of the 71-acre piece) through onto this piece with no fence across, to his knowledge, between the two points.

Cram, another witness for the plaintiff, 66 years of age, testified that he first saw a fence between the two pieces of land in dispute some 40 years ago and that he helped fix the fence near the point marked 3 on the Flint plan, which ran southerly toward the Braintree or Granville line; that he first worked on the fence 28 or 29 years ago for a tenant of Foster Tracy, who owned the 71-acre piece at the time, and afterwards for Foster Tracy himself at a time when the latter was occupying the land west of the fence as a pasture. The witness described a fence that stood on the south line and one on the west line of the 71-acre piece, and after doing so was asked this question: "So there was a fence surrounding what you call this 71-acre piece?" His reply was, "Yes." He also testified that about 40 years ago he saw a fence and bars on the south side of the 71-acre piece next to the Granville or Braintree line. The plaintiff testified that he knew where the old fence was on the southerly side of his lot, and, when a surveying party two years ago set up a stake to mark the southeasterly corner of his lot, he should say the stake was very close to the old fence, but "of course the fence is down over the hill a little ways from where we set it up (meaning the stake), but I should say it was very close."

[6-8] The foregoing evidence is insufficient to establish title to the disputed tract by adverse possession, and the submission of the question to the jury was error. The plaintiff had no color of title to the land in dispute for the reason that all the deeds of the 71-acre piece bound it on the east by either the west line of the 87½-acre piece or by the owner thereof. Hence the true dividing line between the two pieces by the deeds is the western line of the defendant's land and not the line of occupying by the plaintiff's predecessors in title, whatever that may have been. *Smith* v. *Vermont Marble Co.*, 99 Vt. 384, 133 Atl. 355. Color of title is not necessary, however, in order to establish by adverse possession. *Jakeway* v. *Barrett*, 38 Vt. 316, 323. Its office is to determine the character of the occupant's possession and to define its limits and extent. *Hassan* v.

*Safford Lumber Co.,* 82 Vt. 444, 450, 74 Atl. 197. A fence so maintained as to indicate that the occupant is claiming to it has the same operation in extending the effects of acts of possession that color of title has, and gives constructive possession in the same way. *Blondin* v. *Brooks,* 83 Vt. 472, 477, 76 Atl. 184.

The plaintiff argues that the place where Flint said the fence turned to west was at the southeast corner of the 71-acre piece, but that was not his evidence. Flint testified that the fence ran with the line some distance before it turned to the west, and Merrill, who was with him, said that it ran on the line for 15 or 20 rods when it ran off west the rest of the way. This line was 150 rods long, and Merrill is the only witness who gave the number of rods that the fence ran on the line. It is true that the witness Cram, in answer to a leading question, said that there was a fence that surrounded the 71-acre piece, but this ought not to be regarded as more than an inference or the expression of an opinion. The answer of the witness cannot be construed to mean that there was a fence all along the easterly line of the 71-acre piece. The evidence is, rather, that the fence ran on the line for a short distance and then turned west.

[9, 10] It is the law of this State that where one enters upon another's land and so fences it in as to clearly indicate to the true owner and all others who may be interested that he asserts dominion to that limit he may acquire title thereto by adverse possession, though he was at the start without color of title. In such cases the fence has the same effect as color of title and extends acts of possession on any part of the land to the boundary so marked. Nor is it necessary in such cases that the fence shall entirely enclose the land. All that is required is that it shall go far enough toward enclosing it to show that it marked the extent of the claim, and to have that effect the fence must have been erected and maintained for the purpose of enclosing the land as the property of the person who seeks to make adverse title to it, and not for his convenience in the occupation of his other lands, which must appear. *Lyon* v. *Parker Young Company et al.,* 96 Vt. 361, 363, 364, 119 Atl. 881. The evidence as to the location of the fence here in question does not show that it was so erected and maintained as to bring the case within the rules above expressed.

8. The defendant moved to set aside the verdict as being in disregard of the evidence, and not supported thereby. To the

overruling of the motion an exception was saved. This motion was based on the claim that the Flint survey was not of the land in question, and the question has already been passed upon.

*Reversed and remanded.*