2008 VT 9

**FIRST CONGREGATIONAL CHURCH OF ENOSBURG v. Kimberly MANLEY, Ward Manley, Dianne Trudo and Patrick Trudo**

[946 A.2d 830]

No. 06-462

*Crawford*, J.

¶ 1. February 4, 2008. In this boundary-dispute action, plaintiff, First Congregational Church of Enosburg, appeals a decision of the Franklin Superior Court, concluding that plaintiff failed to prove ownership of the disputed property. On appeal, plaintiff argues that: (1) the trial court's findings of fact with respect to record title were clearly erroneous; and (2) the trial court erred, as a matter of law, in concluding that plaintiff had not established title by adverse possession. We affirm.

¶ 2. The facts of this case are undisputed. In 2000, defendants purchased a twenty-three-acre property adjoining the southern boundary of land owned by plaintiff. After surveying the property and obtaining the necessary permits, defendants began constructing a home in May 2002, which was to be located close to the common boundary line of the properties. Defendants constructed a driveway and began work on the foundation of the home, when plaintiff notified them that the driveway and part of the garage encroached on its property. Defendants nonetheless proceeded with their construction plans, and plaintiff sought a declaratory judgment establishing the boundary line and seeking damages for trespass. Shortly before trial, and without objection from defendants, plaintiff amended its complaint, adding an adverse-possession claim.

¶ 3. Deeded for the first time in 1820, plaintiff's parcel was described as ninety-nine feet from north to south, along the Boston Post Road, and 330 feet from east to west. It was the southern part of a 330' by 330' parcel that was bounded on the west by the Boston Post Road and on the north by Nichols Road, formerly known as Trout River Road. Both parties presented the testimony of expert witnesses as to the location of disputed boundary. Relying on the description in the deeds, plaintiff's expert used the current south edge of Nichols Road, and measured 330 feet south to establish the south line of the larger parcel, also the south line of plaintiff's parcel. In finding a different location for the boundary, defendants' expert relied instead on physical evidence of the boundary line, including a stone wall, a fence line, and the location of the church. Both opinions presented difficulties. According to plaintiff's method, the church building is located partly on land

owned by the church and partly on land to the north owned by others. According to defendants' approach, the line 330 feet to the north of the boundary line between the lands of plaintiff and defendants overshoots Nichols Road by twenty feet.

¶ 4. After reviewing the evidence presented by both parties, the trial court concluded that the opinion of defendants' expert was more persuasive. The court found that the more plausible reconciliation of the deed description with the physical facts at the time of trial was that the location of Nichols Road had shifted to the south, as defendants argued. Consequently, the court located the boundary as proposed by defendants and concluded that defendants' construction had not encroached on plaintiff's land.

¶ 5. Both parties also introduced evidence on plaintiff's claim that it had acquired title to the disputed land by adverse possession. Plaintiff relied on the former location of horse sheds and on mowing and parking on the disputed land to establish a claim of right to the land. Defendants, in turn, relied particularly on the testimony of the former owner of their lands that the church's use of the disputed lands was done with permission. The court concluded that plaintiff's evidence of use was "not strong enough to meet the standard of obvious, adverse or hostile ownership over the course of the 15 year statutory period." The court further stated that neither plaintiff "nor its neighbors attempted to keep anyone out or to place buildings on the disputed area." It entered judgment for defendants on the claim of adverse possession. This appeal followed.

¶ 6. We begin with plaintiff's argument concerning record title. Plaintiff contends that the court's findings of fact concerning the disputed boundary were clearly erroneous in a number of respects. In particular, plaintiff argues that the court could not rely on the opinion of defendants' expert witness and specifically could not rely on the expert's drawing of the boundary lines because it did not meet the statutory requirements for surveys or the measurement standards set forth in chapter 45 of Title 26 (regulation of land surveyors). See 26 V.S.A. § 2602. Plaintiff argues that the testimony of defendants' expert was contradictory and "based on questionable methodology." Plaintiff further observes that the description proposed by defendants' expert calls into question the town's ownership of the current road bed for Nichols Road and the titles of those who own property north of that road. Finally, plaintiff stresses that the record does not support a finding that defendants had title to the property by deed. Plaintiff relies on evidence of conveyances of related land by property owners in 1831. According to plaintiff, these conveyances make clear that defendants' deed line never reached north of the sheds and that, therefore, the parcel currently owned by defendants could not have included the disputed property.

¶ 7. The court's determination of a boundary line is a question of fact to be determined by the evidence. *Pion v. Bean*, 2003 VT 79, ¶ 29, 176 Vt. 1, 833 A.2d 1248. We will not disturb the trial court's findings of fact unless they are clearly erroneous, despite inconsistencies or substantial evidence to the contrary. *Monet v. Merritt*, 136 Vt. 261, 265, 388 A.2d 366, 368 (1978). In claiming encroachment, plaintiff carries the burden of proof to establish that it has record title. *Greenmont Lumber Corp. v. Berger*, 154 Vt. 121, 123-24, 574 A.2d 153, 155 (1990). When the court determines whether plaintiff has met its burden, the court's findings will be sustained on appeal unless, viewing the evidence in the light most favorable to the prevailing party, there is no credible evidence to support the findings. *Mullin v. Phelps*, 162 Vt. 250, 260, 647 A.2d 714, 720 (1994).

¶ 8. Although each party's arguments had significant weaknesses, as noted

above, there was ample evidence to support the court's finding that defendants held record title to the disputed lands. The court evaluated the credibility of both expert witnesses and explained the shortcomings of the approach used by plaintiff's expert. First, the court stressed, under plaintiff's approach, the boundary "line [either] passe[d] directly through the center of the church structure" or required the church lot to be considerably larger than the one originally set forth in the church's deed. The court found incredible plaintiff's assertion that the church had moved or had not been built according to the original design plan because: (1) there was no evidence in any records that the church had been relocated; and (2) the evidence showed that early landowners who had dealt with the property were sophisticated and "conscious" of the "importance of boundaries."

¶ 9. Plaintiff's arguments boil down to an attack on the opinion of defendants' expert witness. The superior court addressed each of these arguments and rejected them. Like the superior court, we conclude that these arguments go to the weight of the evidence and thus fall within the purview of that court to resolve. See *Cabot v. Cabot*, 166 Vt. 485, 497, 697 A.2d 644, 652 (1997) ("As the trier of fact, it [is] the province of the trial court to determine the credibility of the witnesses and weigh the persuasiveness of the evidence."). We include in that description the "illustration" admitted as Exhibit X in connection with the testimony of the witness. Contrary to plaintiff's assertion, the court formally acknowledged that the illustration "did not produce a survey which met the standards for recording." The court went on to explain its use of the illustration, stating that the drawing was reliable insofar as it was "based on surveying techniques." There is no dispute that the expert was qualified to give an opinion on the location of the boundaries based on

his education, skill, and experience as a land surveyor. See V.R.E. 702. Land surveyors can produce representations of the location of boundaries that do not meet the requirements of a survey. See *State v. Brooks*, 2004 VT 88, ¶ 15, 177 Vt. 161, 861 A.2d 1096. The illustration was a graphical representation of the expert's opinion testimony. We find no basis on which the illustration should have been excluded.

¶ 10. We come next to plaintiff's claim that the court erred, as a matter of law, in concluding that plaintiff's use of the property was insufficient to establish adverse possession.[*] At the outset, we note that the church had been largely inactive since 1966, a fact tending to undermine plaintiff's adverse-possession claim. Thus, plaintiff was relying on evidence of usage prior to that date and faced difficulties in proving continuous use over a fifteen-year period.

¶ 11. The court did find that plaintiff had used the property for more than fifteen years by mowing the grass around the building and using the property for car access and parking, and further determined that, at some point, a fence existed at roughly the location plaintiff claimed that the boundary existed. The court rejected plaintiff's assertion that the location of the sheds established adverse possession by the church.

¶ 12. Adverse possession is a mixed question of law and fact. *MacDonough-Webster Lodge No. 26 v. Wells*, 2003 VT 70, ¶ 17, 175 Vt. 382, 834 A.2d 25. This Court views the factual findings of the

---

[*] In its brief, plaintiff claims error based on the related theory of acquiescence, explained in *Okemo Mountain, Inc. v. Lysobey*, 2005 VT 55, ¶ 14, 178 Vt. 608, 883 A.2d 757 (mem.). Although plaintiff used the word "acquiescence" in its requests for findings, plaintiff never made a claim based on the theory in its complaint or at any time thereafter, and thus, we have no reason to consider the argument.

trial court in the light most favourable to the prevailing party below, not setting aside findings unless they are clearly erroneous. *Id.* In contrast, our review of the trial court's conclusions of law is plenary. *Hamilton v. Town of Holland*, 2007 VT 133, ¶ 9, 183 Vt. 247, 950 A.2d 1183.

¶ 13. To achieve title through adverse possession, a claimant must show that use of the land was "open, notorious, hostile and continuous throughout the statutory period of fifteen years." *Wells*, 2003 VT 70, ¶ 24. We start with the element of open and notorious use. This element of adverse possession may be asserted under a claim of title, where the claimant has a colorable, but defective, deed, or under a claim of right. *Cmty. Feed Store, Inc. v. Ne. Culvert Corp.*, 151 Vt. 152, 156, 559 A.2d 1068, 1070 (1989). The requirement that claimants demonstrate a claim of right "rests on the public policy that existing rights in land should not be lost unless the owner has been put on guard sufficiently to enable him or her to take preventive action with reasonable promptness." 16 Powell on Real Property § 91.04[1] (2005). Where there is no claim of title and "a lot has no definite boundary marks, adverse possession can only extend as far as claimant has actually occupied and possessed the land in dispute." *Cmty. Feed Store*, 151 Vt. at 156, 559 A.2d at 1070.

¶ 14. Plaintiff makes a number of arguments about why the evidence established adverse possession as a matter of law. Plaintiff first argues that the evidence established that the sheds were not on defendants' land but on the disputed land. The court rejected this argument. The court found that the sheds resembled "long common garages, open on one side, frequently constructed today to serve condominium developments." One of the sheds was parallel to the disputed boundary, and the court found it was "in about the location identified by [defendants' ex-

pert witness] as the south side of the church's lot." The court concluded with the following analysis:

> The court is not able to infer very much from evidence about the sheds except to note that sheds were at least partly privately owned and that the establishment of the Boutell strip, south of the church and on the land now in dispute, casts doubt on whether the church owned this property which lies somewhere within the disputed strip. The location of the sheds does not establish the south line of the building since it is not clear where the sheds were located. It is also not clear whether the sheds were built on the church lot or on adjacent property which was actually deeded to a private owner for that purpose as in the case of the Boutell lot. It is also possible that adjoining property owners voluntarily permitted the construction of the sheds on their property.

This analysis is based on findings that are supported by the evidence. Thus, we must uphold it.

¶ 15. Apart from the presence of the sheds, plaintiff's main ground for adverse possession is the mowing of the grass in the disputed area by employees of the church. Plaintiff claims that mowing the grass by itself established plaintiff's claim of right to the property. We disagree. Although mowing the grass may be evidence of a claim of right, lawn-mowing "could [also] well have been an act of neighborly accommodation." *Mesher v. Connolly*, 388 P.2d 144, 147 (Wash. 1964); see also *Romans v. Nadler*, 14 N.W.2d 482, 486 (Minn. 1944) ("It is a well-known fact that many thousands of homeowners have no boundary fences and that adjoin-

ing owners occasionally trespass on their neighbors' lands in cutting grass . . . . Such harmless trespasses are committed upon the well-founded assumption that ordinarily a neighbor will acquiesce in and consent to them."). Thus, courts have held that maintaining a lawn is not, by itself, sufficient to establish that use is open and notorious in a developed neighborhood. See *Stanard v. Urban*, 453 N.W.2d 733, 735-36 (Minn. Ct. App. 1990) (using land to store equipment in the winter, mowing the land in the summer, and allowing children to play on the land insufficient to establish that use was open and notorious); *Montieth v. Twin Falls United Methodist Church*, 428 N.E.2d 870, 875 (Ohio Ct. App. 1980) (mere maintenance of land, such as mowing grass, insufficient to establish that use was open and notorious); *Bywaters v. Gannon*, 686 S.W.2d 593, 595 (Tex. 1985) (mowing grass and landscaping not sufficient to establish that use was open and notorious).

¶ 16. Plaintiff has cited numerous appellate decisions where lawn-mowing was a significant part of a holding that adverse possession had been established. Generally, these are cases upholding a decision of the trial court and are based on the standard of review. See *Dombkowski v. Ferland*, 2006 ME 24, ¶¶ 30-31, 893 A.2d 599 (applying "credible-evidence" standard); *Davy v. Trs. of Protestant Episcopal Church*, 231 N.W. 83, 85 ( Mich. 1930) (facts "warranted" the finding of adverse possession). In addition, in most of the cases, the lawn-mowing was only one of a number of uses and was not necessarily the most important use. See *Dombkowski*, 2006 ME 24, ¶¶ 4-7, 31 (mowing, clearing, driving, fencing and drilling a well); *Collins v. Cabral*, 206 N.E.2d 84, 85 (Mass. 1965) (mowing, clearing land, using land for recreational activities, seeding ground, and constructing septic tank on disputed land); *Gorman v. Hess*, 754 N.Y.S.2d 393, 395 (App. Div. 2003) (mowing, planting, making repairs, and marking a border);

*Brennan v. Manchester Crossings, Inc.*, 708 A.2d 815, 821-22 (Pa. Super. Ct. 1998) (mowing, raking leaves, planting seed, and using land for storage and recreational activities). In any event, the factual details of other cases are useful, but not determinative, as each case must be decided on its own facts.

¶ 17. Here, the court adopted an explanation for the lawn-mowing that did not show hostile use. The court found that the most probable explanation was that, because the owners of the sheds attended the church, the church mowed up to the sheds. Once the sheds were removed, the court reasoned, the church continued the pre-existing practice of generally mowing "the grounds." On this basis, the court could not find that the mowing occurred under a claim of ownership:

> Within living memory, neither the church nor its neighbors attempted to keep anyone out or to place buildings on the disputed area. . . . [The southern neighbor's] relationship with the church was friendly, informal and founded on an attitude of laissez-faire and minding his own business which is familiar to anyone who has lived in a small town. The church's occasional use of the disputed ground does not support a finding that it was adverse and intended to exclude others from the property.

Again, the court's conclusions are supported by the findings, which, in turn, are not clearly erroneous. Thus, we must uphold the conclusions.

¶ 18. Plaintiff makes two additional arguments in support of its position that the superior court failed to properly evaluate its evidence of adverse possession. First, it argues that the superior court made an error of law by holding that adverse possession could not be established unless plaintiff placed buildings in the disputed

area. Although, as quoted above, the superior court noted the absence of building construction in the disputed area, we do not read its discussion as making building construction a prerequisite to finding of adverse possession. We do not agree that the court made an error of law.

¶ 19. Second, plaintiff argues that this is a case of multiple adverse uses of the disputed area and that, in the aggregate, the superior court should have held that these uses were sufficient to establish adverse possession. In addition to the mowing, plaintiff mentions the fence, the driveway and the parking. The superior court found that, at one time, there was a wire fence along the boundary claimed by plaintiff. The court further found, however, that the purpose of the fence was to contain the animals of defendants' predecessor-in-title and not to establish the boundary line between the properties, adding that "[t]he wire fence was never intended to keep people off church grounds which have always been open and accessible to all." In its conclusions, the court stated "there was evidence that there was a barbed wire fence across the disputed area in the middle years of the twentieth century although its location is not really known." Although the evidence of fencing was conflicting, the evidence supports the court's conclusion that any fencing was done to contain animals and not to establish a boundary between the properties. See *Wells*, 2003 VT 70, ¶ 28 (fence of convenience not intended to be a boundary fence does not establish adverse possession) (quoting and relying on *Hovendick v. Ruby*, 10 P.3d 1119, 1123 (Wyo. 2000)); see also *Thurston v. Batchellor*, 100 Vt. 334, 341, 137 A. 199, 202 (1927) (stating that "to have that effect the fence must have been erected and maintained for the purpose of enclosing the land as the property of the person who seeks to make adverse title to it, and not for his convenience in the occupation of his other lands").

¶ 20. Similarly, plaintiff notes the evidence that cars parked in the disputed area and that there was a dirt drive along the boundary area. The location of the drive in relation to the disputed boundary is unclear, although it appears that the drive was closer to the church than the sheds. Because, as noted above, the court found that the south shed was about in the location of the boundary line, as argued by defendants, the drive was apparently on church property, wherever the boundary is located.

¶ 21. There is, however, no question that, after the sheds were removed people "parked where they wished," including in the disputed area. The court concluded that this parking was "too occasional and inconsequential to support a claim of ownership." The court also concluded that defendants' predecessor-in-title did not object to the usage and that it was not adverse or "intended to exclude others from the property." Again, we conclude that these findings and the conclusions based on them are supported by the evidence and must be upheld.

¶ 22. In conclusion, we find that the court's conclusion that the plaintiff did not establish adverse possession is consistent with the law and supported by the findings.

*Affirmed.*