Chase et. al. v. Taft Hill Tree Farm, Inc. et. al., No. 458-10-11 Wmcv (Wesley, J., Jan. 24, 2014).

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

## VERMONT SUPERIOR COURT

| | |
|---|---|
| **SUPERIOR COURT** <br> **Windham Unit** | **CIVIL DIVISION** <br> **Docket No. 458-10-11 Wmcv** |

| | |
|---|---|
| **Thomas W. Chase, Harold E. Chase, and Ralph L. Chase,** <br> **Plaintiffs.** <br><br> **v.** <br><br> **Taft Hill Tree Farm, Inc., Eric S. Scott and Patricia M. Scott,** <br> **Defendants.** | |

### Opinion & Order
### Granting Defendant's Motion for Summary Judgment

### Background

*Procedural History*—Plaintiffs sue Defendants to quiet title to a parcel of undeveloped land in Townshend, Vt., and Defendants counter claim to quiet title. All parties claim record title to the property. Alternatively, Plaintiffs assert they are now entitled to ownership by adverse possession. Defendants moved for summary judgment on June 14, 2013. Plaintiffs opposed summary judgment on July 15, 2013. Defendants responded to Plaintiffs' opposition on July 23, 2013.

On September 4, 2013, the Court issued an order on Defendants' motion for summary judgment. The Court, Hon. Karen Carroll, presiding, summarized the undisputed facts, and the Court, by the undersigned currently presiding judge, now incorporates those facts into this order by reference. Among other things, the Court held that the parties did not contest Defendants' predecessors owned the disputed property as of 1873. Nevertheless, Plaintiffs' expert has concluded that their predecessors in title obtained at least a portion of the disputed property as shown by the deed from Herbert Bernap to Plaintiffs' parents, Clarence and Emily Chase, dated April 26, 1958.

Because the Court concluded the summary judgment record contained insufficient information to trace ownership between 1873 and 1958, it directed the parties to supplement the record. On October 2, 2013, Defendants produced additional briefing and exhibits. On October 10, 2013, Plaintiffs opposed Defendants' new filings. The Court scheduled oral argument on Defendant's motion for summary judgment on Jan. 3, 2014. Plaintiffs were represented by Stephen Ankuda, Esq. Defendants were represented by Christopher Blanchard, Esq.

Aided by the supplemented summary judgment record, the Court concludes that Defendants have established deeded title to the disputed parcel through an analysis of the chain of conveyances, to which Plaintiffs offer no persuasive rebuttal supported by the evidence of

record.  In explaining this conclusion, the Court will repeat certain of the critical conclusions previously discussed in the Sept. 4 opinion and order.

*Title History through 1873*—The disputed land is an approximately nine acre parcel ("the parcel") located east of what is now known as Back Windham Road ("the road") in Townshend. It is accurately described by the survey for Taft Hill Tree Farm, Inc. platted by Dauchy Associates, Inc. dated Dec. 15, 1990, which was admitted into the summary judgment record by stipulation during oral argument. The Dauchy survey also corresponds to the analysis and diagrams by Defendants' expert, Aurelius DiBernardo, submitted as Ex. E in support of Defendants' Statement of Undisputed Facts filed on June 14, 2013.  As shown, Defendants own land along the west side of the road, across from the parcel. Plaintiffs' land abuts Defendant's land north of the parcel. The parcel is bounded to the west by the road, to the north and east by Plaintiff's land, and to the south by a stone wall which forms the southern border of Plaintiff's land to the east, and extends west from the southwestern corner of Plaintiff's land, between the parcel and land now, or formerly of Jacobs, until it reaches the road.

The holdings of the current parties correspond roughly to two former farmsteads, Defendants occupying much of what was formerly the Taft Farm, and Plaintiffs occupying much of what was formerly the Hazelton Farm. The parcel, or at least the eastern portion, has changed hands several times over the last two centuries. Throughout the 19th century, the parcel was part of either the Taft Farm or the Hazelton Farm, and the eastern portion is in the chain of title of both, changing hands from Hazelton to Taft in 1812.

The parties do not dispute that the existing stone wall, bisecting the parcel east of the road, as shown on the survey and Ex. E, marks what was the eastern boundary of the Taft Farm prior to 1812. Furthermore, the parties do not dispute the chain of conveyances involving the parcel during the remainder of the 19th century, nor the parcel's location relative to other monuments and known boundaries. As explained below, there is no evidence that, after 1812, the portion of the parcel east of the road and west of the stone wall has ever been conveyed out of the Taft Farm chain of title.

On May 5, 1812, Peter Hazelton conveyed the portion of the parcel lying east of the stone wall to Peter Rawson Taft, together with other land lying to the north. *See* Ex. 1 (outlined in yellow, admitted at the summary judgment hearing); *see also* Ex. E, Sheet 1. This conveyance of approximately thirteen acres separated the portion of the parcel east of the stone wall from Hazelton Farm, and joined it to Taft Farm. It established a new eastern line for Taft Farm approximately 600 feet east of the stone wall that formed the prior eastern line. That line was described in the May 5, 1812 deed as running N 10° W. Its location was confirmed by DiBernardo's field inspection which "revealed a large yellow birch tree and a stone pile at the easterly end of the line on the easterly bounds of the Taft Farm as it existed in 1812, the location of which is proven by the description in Book 5 at Page 398." Ex. E. As explained below, there is no evidence, following this 1812 conveyance, that the portion of the parcel east of the stone wall and west of the southern tract of Hazelton farm has ever been conveyed out of the Taft Farm chain of title.

2

As of 1858, Charles C. Howard owned the Taft Farm, including the entire disputed parcel. In 1869, Hazelton Farm was conveyed to Samuel E. Williams. In 1873, Charles C. Howard's sons, Charles D. and William H.M. Howard, who had purchased the farm from their mother after their father's death, conveyed two parcels of land on Taft Farm to Samuel E. Williams. This conveyance effectively added back to the former Hazelton Farm lands conveyed in the 1812 grant from Peter Hazelton to Peter Rawson Taft, *except for the parcel,* which remained as part of the former Taft Farm. *See* Ex. 1 (outline in blue); *see also* Ex. E, Sheet 3. Parcel 2 in this conveyance abutted the disputed parcel to the north. Parcel 2's southern bound was described as running "thence south 76 degrees east to a stake and stones on the east line of said late Charles C. Howard's said farm" (the former Hazelton Farm). The parties do not dispute that the southern boundary of Parcel 2 described in the 1873 deed also delineates the northern boundary of the disputed parcel, nor that any part of the disputed parcel was conveyed back to rejoin lands comprising the former Hazelton Farm. Thus, there is no dispute that as of 1873 the parcel was part of the lands formerly known as the Taft Farm.

*Title History from 1873 to Present*—On April 24, 1882, Charles D. Howard and William H. Howard conveyed to Augustus Barber property on both sides of the Back Windham Road. The northern boundary of the conveyance is described in reference to "the southerly side of Samuel E. Williams land." This is the line established by the Howard brothers' conveyance to Williams in 1873, by which they retained the parcel. It is thus undisputed that the deed to Barber included the parcel. Thereafter—as shown in Defendants' Chain of Title Diagram, Ex. 1 to Defendants Memorandum in Response to the Court's Order on Defendants' Motion for Summary Judgment Dated September 4, 2013 filed Oct. 2, 2013, and the copies of the deeds referenced by it—the parcel passed without further conveyances out, until John L. Jacobs and Marjorie Franks deeded it to Defendant, Taft Hill Tree Farm, Inc., on September 18, 1981. Although the description of the Barber property down the chain of title does not include metes and bounds, there is no evidence disputing that it originally included the disputed parcel, or that it remained intact until acquired by Defendants. Similarly, there is no evidence placing in dispute the description of the parcel as established by the 1812 deed defining its eastern line, and the 1873 deed defining its northern line, with the western bound lying along the road, and the southern bound along the stone wall extending west from where it formed the southern bound of the former Hazelton Farm, as shown on the Dauchy survey and confirmed by the DiBernardo analysis.

The dispute as to Defendants' record title rests exclusively on Plaintiffs' interpretation of language in the deed from Herbert Bernap to Plaintiffs' parents dated April 26, 1958. In this deed, Bernap conveyed property "bounded on the west by the back highway leading from West Townshend Village to the Village of South Windham." The deed further recited the grantor's intention to convey all his land on the east side of the road which he had acquired by deed of Josephine Donnis dated April 5, 1948. Plaintiffs' expert, Gary Rapanotti, attests: "It is based upon this 1958 Bernap to Chase deed that I am of the opinion that the Disputed Property is in the Plaintiffs' chain of title." Nonetheless, Mr. Rapanotti also gave deposition testimony stating that some portion of the parcel had been conveyed by the Jacobs and Franks 1981 deed to Defendants, though he was unable to define what portion of the parcel. As Plaintiffs admitted during oral argument, Mr. Rapanotti's opinion is not supported by any deed indicating a conveyance out of Defendant's chain of title leading back to the reservation of the parcel by

3

Charles and William Howard from the conveyance to Samuel E. Williams in 1873. On the other hand, the property conveyed from Donnis to Bernap is traceable as a portion of the land conveyed in the 1873 deed from Charles and William Howard to Samuel E. Williams.

In 2008, Plaintiffs subdivided portions of their property, creating certain separate interests. As the southern boundary of one of the parcels thus created, the deed utilizes the identical description platted in the 1990 Dauchy survey as establishing the sourthern bound of the Plaintiffs' property, and the northern bound of the parcel : "thence S 74 ° 09' E for a distance of 761.8 feet, more or less, to a stake and stones". This is essentially the same description that was established when Charles and William Howard reserved the parcel from their conveyance to Samuel E. Williams in 1873.

*Facts Related to Plaintiffs' Claim for Adverse Possession*—In its September 4, 2013 order, the Court also highlighted Plaintiffs' claims for adverse possession. Plaintiffs claim a history of logging the land two or three times between 1940 and the present. Thomas Chase, one of the plaintiffs, also submitted an affidavit that indicated he remembered his father posting the disputed property in the past. Plaintiffs also claim that they paid taxes on the disputed property, but the Court determined the tax maps did not confirm that interpretation. Finally, Plaintiffs enrolled the property in a current use plan.

## Standard of Review

The Court grants summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." V.R.C.P. 56(a). The Court makes all reasonable inferences and resolves all doubts in favor of the non-moving party. *Lamay v. State*, 2012 VT 49, ¶ 6, 191 Vt. 635. Nevertheless, the non-moving party cannot rely solely on the pleadings to rebut credible evidence. *Boulton v. CLD Consulting Eng'rs, Inc.*, 2003 VT 72, ¶ 5, 175 Vt. 413.

## Discussion

Plaintiffs present two claims: ownership by title and ownership by adverse possession. Plaintiffs are unable to show disputed material facts that would prevent summary judgment and Defendants are entitled to judgment as a matter of law. Plaintiffs admit Defendants' predecessors owned the disputed property in 1873 and Plaintiffs are unable to show any transfer of ownership out of Defendants' chain that supports their expert's opinion that they acquired all or some of the parcel through the 1958 Bernap conveyance.  On the other hand, Defendants' chain of title demonstrates continuous ownership of the disputed property.  Plaintiffs' alternative claim based on adverse possession fails as a matter of law for insufficient evidence meeting the legal test for hostile use over the prescribed period of fifteen years.

1. *Plaintiffs' Claim of Title for the Disputed Property*

A grantor may only convey property that the grantor owns at the time of the conveyance. *See Vt. Shopping Ctr., Inc. v. Pettengill*, 125 Vt. 145, 148–49 (1965); *Sheldon Slate Products Co.*

4

*v. Kurjiaka*, 124 Vt. 261, 268 (1964). In this case, Plaintiffs fail to establish disputed facts to support the claim that Bernap had acquired title to any portion of the disputed parcel so as to have properly conveyed it to their parents in 1958.

Plaintiffs claim a deed from Herbert Bernap on April 26, 1958 conveyed the disputed property to their predecessors. Bernap received the property on April 5, 1948 from Alexander and Josephine Donnis. The deed from the Alexander and Josephine Donnis to Herbert Bernap does not give a precise description of the land transferred. Instead, the 1948 deed references other properties and concludes it transfers "all and the same premises conveyed to Alexander Donnis by deed of William A. Barber…" Barber received the property from the Hampton Glazed Paper Co. on August 24, 1943. The 1943 deed does not describe the property except by reference to a chain of title. By similar description, Hampton received the property from George G. and Helen W. Bates on July 25, 1914. George and Helen Bates received the property from Delmar Kent on March 11, 1901.

The 1901 deed describes the property. Significantly, the deed indicates the southern bounds of the property as "south seventy six degrees east to a stake and stones…" Delmar Kent received the property from Mary Kent on April 23, 1900. The 1900 deed also contains the relevant language: "thence south seventy six degrees east to a stake and stones…" Mary Kent in turn received the property from Samuel Williams on August 22, 1891. The 1891 deed also indicates the southern boundary as: "south seventy six degrees east to a stake and stones…" In the seminal transaction central to this dispute, Samuel Williams received the property from Charles D. Howard and William H. Howard on March 24, 1873. The 1873 deed first describes the boundary used in the several subsequent conveyances: "South 76° East to a stake and stones…" As explained above, the parties have demonstrated no dispute that the 1873 deed set the boundary for Plaintiff's predecessors as north of the disputed parcel. Examination of the conveyances leading to Josephine Donnis' ownership reveals her title derived from lands once owned by Samuel Williams, and Samuel Williams never owned the disputed parcel.

The property acquired by Herbert Bernap from Alexander and Josephine Donnis could not have included the disputed property, because the Donnis' never owned the disputed property. *See Pettengill*, 125 Vt. at 148–49. Thus, the 1958 deed read by Plaintiffs and their expert as conveying a portion of the disputed property from Herbert Bernap to Clarence and Emily Chase, had no effect on the title to the parcel because Herbert Bernap never owned the parcel, or any portion of it. Plaintiffs received the properties from the estate of Clarence Chase on January 22, 1985. Plaintiffs only own the property owned by Herbert Bernap in 1948, which did not include any portion of the parcel.

On the other hand, Defendants trace their title back to the conveyance from Charles D. and William H. Howard to Augustus Barber in 1882. Though the deed does not specify metes and bounds, the description leaves no doubt that the disputed parcel is the portion of the land which was subject to this conveyance which lay east of the road. The deed conveys lands whose northern bounds are "on the southerly side of Samuel E. Williams land…" The identification of lands south of those once owned by Samuel E. Williams shows this transfer must be on the other side of the line "south seventy six degrees east to a stake and stones," which describes the parcel.

From the 1882 transfer between the Howards and Augustus Barber, it is possible to trace the disputed land to Defendants. August Barber left the land his wife, Eleanor Barber, on September 4, 1889. Eleanor Barber left the land to her children on April 12, 1899. The children of Augustus and Eleanor Barber conveyed the land to A.H. Wheeler on December 26, 1912. A.H. Wheeler conveyed the land to John Gould, Melvin Austin, and Del Parker on June 30, 1914. Gould, Austin, and Parker transferred the Land to Nellie and George Herrick on November 7, 1914. Nellie Herrick transferred the land to John Tibbetts on August 15, 1935. Tibbetts conveyed the land to Marjorie Franks and John Jacobs on August 31, 1935. Franks and Jacobs then conveyed the land to Defendants on September 18, 1981.

The metes and bounds of the parcel had been established by reference to the 1873 deed from Charles D and William H. Howard to Samuel Williams setting the parcel's northern line, and by which they reserved ownership of the parcel as the remainder of the land conveyed by Peter Hazelton to Peter Rawson Taft in 1812, which deed set the parcel's eastern line. Plaintiffs can point to no deed out of Defendants' chain after the 1882 conveyance from Howards to Barber which reconfigured the parcel from its description as of 1873, or placed any portion of it in a different chain of title that includes the property which their parents acquired in the 1958 conveyance from Bernap.

Not only have Plaintiffs failed to challenge the description of the parcel, as set out in the 1812 and 1873 deeds, they have acquiesced in Dauchy's 1990 platting of the boundaries made in reliance on those earlier deeds. Dauchy reported his opinion to Plaintiffs in 1991, which they never challenged until commencing this suit in October 2011. Furthermore, in 2008, Plaintiff's acknowledged the accuracy of Dauchy's line, "S 74 ° 09' E for a distance of 761.8 feet, more or less, to a stake and stones", as establishing the boundary between their property and the disputed parcel, because they used the same description to create a subdivision of their holdings. Plaintiffs have acquiesced in the determination of the boundary. *See Okemo Mountain, Inc. v. Lysobey*, 178 Vt. 608, 611 (2005).

Defendants are entitled to summary judgment as to their claim to record title to the disputed parcel.

2. *Plaintiffs' Claims for Adverse Possession*

"To achieve title through adverse possession, a claimant must show that use of the land was 'open, notorious, hostile and continuous throughout the statutory period of fifteen years.'" *First Congregational Church of Enosburg v. Manley*, 2008 VT 9, ¶ 13, 183 Vt. 574 (quoting *MacDonough-Webster Lodge No. 26 v. Wells*, 2003 VT 70, ¶ 24, 175 Vt. 382); *see also* 12 V.S.A. § 501 (setting the statutory period at fifteen years). Plaintiffs claim they adversely possessed the land through sporadic logging operations conducted on the property by their predecessors, by paying taxes on the property, by enrolling it in a current use plan, and by posting the property.

As the Court already noted, the tax maps submitted by Plaintiffs do not establish that they paid taxes on the disputed parcel. Even had they made such a showing, however, paying taxes on a property is not a hostile use of the property. *See In re Petition of Doering*, 165 Vt. 603, 605–06

(1996) ("payment of taxes is evidence of a claim of right, it is not an act of possession."). By analogy, enrolling the property in a current use plan is not a hostile use. A reduction of taxes Plaintiffs might have otherwise paid on the property except for the current use designation is equally unavailing as paying taxes for support of a claim of adverse possession.

Plaintiffs' claim of logging is similarly insubstantial. By the affidavit of Thomas Chase, Plaintiffs or their family logged the land three times over approximately seventy years. To show adverse possession, the use must be continuous. *See Manley*, 2008 VT 9, ¶ 13. Occasionally entering a property to cut trees or conduct minor repairs is not enough to turn trespass into ownership. *Austin v. Wells*, 59 Vt. 157, 166–67 (1887). Plaintiffs contend that continuous use must be inferred because the only use to which the land was put over a long period was timber productions. However, they have supplied no authority for that argument, and the Court concludes that the circumstances here are governed by *Austin. See id.*

The claims of posting the land also are too vague to support a claim of adverse possession. While Thomas Chase asserts that his father posted the land, he has provided no details supported by personal knowledge as to when the land was posted, what area was posted, or how long those notices remained on the land. Plaintiffs' vague claims are unsupported by any physical evidence of posting. Under these circumstances, Plaintiffs have not shown sufficient evidence to create genuine issue of material fact as to whether they or their predecessors occupied the disputed property through open, notorious, hostile and continuous use for fifteen years. *See Manley*, 2008 VT 9, ¶ 13.

Defendants are entitled to summary judgment as to their claim that Plaintiffs have failed to demonstrate ownership by adverse possession

## Order

The Court **GRANTS** Defendants' motion for summary judgment. Judgment shall issue for Defendants and against Plaintiffs confirming Defendants' record title, and denying Plaintiffs' claims for record title and for title by adverse possession. Defendants shall submit a proposed judgment order within 10 days.

Dated and signed electronically at Newfane, Vermont on January 24, 2013

_John P. Wesley_

_____
John P. Wesley
Superior Court Judge

7