### Charles L. Montgomery et al. v. W. Barry Branon et al.

[278 A.2d 744]

No. 18-70

Present: Holden, C.J., Shangraw, Barney and Keyser, JJ.

Opinion Filed June 1, 1971

*Hanford G. Davis,* Brandon, for Plaintiffs.

*Black & Plante,* White River Junction, with *George W. Ray, Jr.,* White River Junction, of counsel, and *Kinney & Carbine,* Rutland, for Defendants.

**Shangraw, J.** The case has been appealed to this Court on two occasions and is reported in 125 Vt. 362, 216 A.2d 41 (1965), and 127 Vt. 83, 238 A.2d 650 (1968).

The plaintiffs' action is in ejectment and pertains to an undivided one-half interest in and to a small lot of land lying on the westerly shore of Hinkum Pond in the Town of Sudbury, Vermont. Plaintiffs own the remaining undivided one-half interest in and to the lot. There is a camp or cottage and outhouses located on the lot in question. Hinkum Pond covers an area approximately twenty acres and is public waters.

During the trial below of the first appeal to this Court reported in 125 Vt. 362 the defendants simultaneously claimed title by deed to a limited area, and beyond the limits of the deed, by adverse user. The trial court apparently found itself, in the presence of evidence of occupation and evidence of boundary locations, dissatisfied with the proof. Judgment was rendered below in favor of the plaintiffs. The county court's judgment order recognized defendants' claim only as to the cottage itself and the land beneath the building. The defendants appealed and this Court held that the trial court applied too rigorous a test to the defendants' evidence. The judgment was reversed and cause remanded for further evidence, if necessary, so that a decree may be drawn setting forth with certainty the bounds of defendants' lot.

On rehearing the defendants again claimed ownership by adverse possession to a parcel of land surrounding the camp.

This Court in 127 Vt. 83, at pages 89 and 90, settled the issue of adverse possession favorably to the defendants. The only matter then left for determination was the fixation of the boundary lines of the lot to which the defendants were entitled.

The trial court made new findings of fact and determined its boundaries. Judgment was rendered in favor of the plaintiffs from which the defendants appealed. This Court held at page 91 of the opinion that the description of defendants' tract of land as set forth in the challenged findings was not supported by the evidence. Judgment was reversed and the cause remanded.

Following this remand, the case was again heard by the court in Rutland on October 7th and 27th, 1969. Findings of fact were promptly made and filed. These were followed by a judgment order. One of the defendants, W. Barry Branon, timely filed a notice of appeal to this Court from the order.

Prior to the filing of the findings of fact it was stipulated by the parties that the transcript of the testimony at the hearing held by the Rutland County Court on July 26th and 27th, 1966, may be entered in evidence *in toto* as an exhibit, and that the county court may make use of it in its preparation of the findings of fact. This had reference to the trial and result which was later appealed to this Court and reported in 127 Vt. 83–91.

The notice of appeal from the judgment order brings the whole case, including all questions litigated in the court below which affect the final judgment, if they are briefed, to this Court for review. *Krupp* v. *Krupp*, 126 Vt. 511, 513, 236 A.2d 653 (1967); *Century Indemnity Co.* v. *Mead*, 121 Vt. 434, 436, 159 A.2d 325 (1960).

About 1921 or 1922 Charles Scott and wife built a camp on the lot in question. Later, in 1924, the Scotts were deeded one-fourth acre of land, more or less, which included the land on which the camp was situated. By subsequent deeds to various users and occupants of the camp property, this property was eventually conveyed by Cecilia Mulcahy, grantor, to Thomas J. and Vivian Moroney and Barry Branon and Mary W. Branon by warranty deed dated October 18, 1943.

The description in the Mulcahy deed in part states that the parcel conveyed contains one-fourth acre of land, be the same more or less, and bounded on all four sides by lands of Mary Germond. The description continues by stating "(a)lso a right of way over lands owned by said Mary Germond to and from the road and to and from Hinkum Pond." The descriptions in all of the deeds in defendants' chain of title are the same as that in the deed from Cecilia Mulcahy to the Maroneys and the Branons dated October 18, 1943.

Since the beginning of this litigation the plaintiffs have acquired the half interest of the Maroneys, two of the original defendants. This leaves the defendants, W. Barry Branon and Mary M. Branon, only an undivided one-half interest in and unto the property in controversy.

By finding 26 the trial court found that the defendants and their predecessors in title have possessed, occupied and used continuously, uninterruptedly, openly, notoriously, hostilely and under a claim of ownership for more than fifteen years prior to the commencement of this litigation, the following described land and premises:

Beginning at a point where stands a pine tree located approximately twenty-nine (29) feet, from the west shore or westerly waters edge of Hinkum Pond, which tree bears or did bear the legend S thereon and which tree designates the northeast corner of the area here described; thence turning and running in a straight line westerly a distance of approximately 113 feet to a point a short distance beyond the location of the old "outhouse"; thence turning and running in a southerly direction a distance of approximately 144 feet to a point in the south side of the Ramp Road, so-called, which Ramp Road extends east to the shores of Hinkum Pond. Said point established herein as the south westerly corner of the area described is approximately 10 feet from a 30 inch pine stump designated on defendants exhibits D and G; thence turning and running in an easterly direction along the southerly side of the Ramp Road a distance of approximately 122 feet to a 10 inch elm tree with a cable embedded therein, which elm is near the southwesterly corner of the so-called new dock (see defendants

exhibits D and G); thence turning and running in a northerly direction, or a little northwesterly, a distance of approximately 135 feet to the pine tree marking the place or point of beginning.

By amended and supplemental findings of fact the court determined that the defendants have acquired an interest in and to the land described in finding 26 by adverse possession. It was also therein found that any right, title or interest in and to the premises in question which the defendants have acquired by adverse possession is limited and confined to an undivided one-half (½) interest therein in that the plaintiffs are the owners of the remaining or other undivided one-half interest.

A judgment order was later issued in which it was Ordered and Decreed that the plaintiffs have and recover from the defendants the seisin and peaceable possession of all and singular the land and premises with the appurtenances thereof as described and set forth in plaintiffs' complaint EXCEPT an undivided one-half interest in and to that portion of said premises described in paragraph 26 of the Court's findings of fact. Then followed verbatim the description and boundaries as stated in paragraph 26 of the findings of fact.

The judgment order continued by awarding the plaintiffs damages of one dollar ($1.00) together with taxable costs in this action. Execution and a writ of possession to issue forthwith.

The defendants base their appeal on the following grounds, viz: (1) that the court erred in finding, in effect, that the defendants had not acquired title by adverse possession to any portion of the lake shore; (2) that, even if the first claim of error is not sustained, the court erred in failing to find that the defendants had acquired an easement from the land in question to the water's edge; and (3) that it was error, in view of the findings, to render a judgment in favor of the plaintiffs to recover damages in the amount of one dollar and for the defendants to pay the costs.

The defendants' third point as to damages and costs is not briefed and therefore consequently waived. *Little* v. *Loud,* 112 Vt. 299, 301, 23 A.2d 628 (1942); *State* v. *Noyes,* 111 Vt. 178, 13 A.2d 187 (1940).

The camp in question is situated approximately 75 feet west of the shore line of Hinkum Pond. It has been occupied since its construction in 1921 or 1922 mostly as a fishing and hunting lodge. The land in the vicinity of the camp is open, unenclosed, and has the appearance of being in its natural state with a growth of brush, saplings and small trees. There is however a grass area westerly of the camp. Also, to the south and southwest of the camp, within the area claimed by the defendants, two places have been used over the years for dumping refuse.

There is evidence that there is a well-worn path from the kitchen door of the camp to the pond. The path went southeasterly entering the so-called Ramp Road leading to the dock as it reaches the pond. This road leading to the pond was of sufficient width to accommodate motor vehicles in transporting boats to and from the pond. There is evidence that this path had existed at least since 1933 or 1934.

The defendants are primarily concerned about a triangular parcel of land lying between the easterly line of their property and Hinkum Pond. The southeasterly corner of their lot, as found by the lower court, is represented by an elm tree with a cable embedded in it, which tree is near the southwesterly corner of a new dock.

The northeasterly corner of their lot was determined to be approximately twenty-nine (29) feet from the west shore or westerly edge of Hinkum Pond and evidenced by a pine tree which bears or did bear the legend S thereon. The easterly line of defendants' property, as determined by the court, affords them no lake shore frontage. This is because the easterly line as found runs from its inception at the elm tree in a somewhat northwesterly direction away from the shore line to the pine tree located about 29 feet westerly from the pond. The defendants are without access to the pond from their lot.

Notwithstanding defendants' claim of title by adverse possession to the triangular parcel of land, or at least to some portion thereof to the shore of the pond, it is also claimed by them that the court committed error by failing to find that they had acquired an easement from their land to the edge of the pond.

There is evidence to the effect that a cable embedded in the elm tree, referred to in the findings, runs along the lake shore

to a pine tree, in which the cable is also embedded, a distance of about forty (40) feet. This cable was used by Michael Mulcahy, one of the defendants' predecessors in title, for years prior to 1941. Its purpose was to secure boats. The cable has remained in its present location ever since Mulcahy first placed it there. To say the least, some portion of the pond frontage in the vicinity of the dock had been used since 1943. In this connection, each conveyance in the defendants' chain of title contained an express grant of a right of way ". . . to and from the road and to and from Hinkum Pond." To this end, the defendants claim either a right of way to the shore of the pond, or that they have acquired title to the land itself in the area where the dock is located.

The defendants suggest in their brief that should this Court rule that defendants have not acquired title to the forty feet frontage of shore front between the elm and pine trees, then the case should be remanded again for the purpose of determining just what they did acquire by way of access to the pond.

In the first part of their brief, the appellees have devoted considerable space to a recital of certain findings made in the two previous trials including portions of this Court's opinions. Reference is also made to findings in this case, now appealed, and that on examination of the transcripts in the two previous trials the court found conflicting testimony and a change of positions by defendants as to the boundary points and extent of ownership. Also, that there appeared contradictions in the testimony of defendant, Mr. Brown. Appellees further referred to, and quoted certain findings made by the trial court as a result of this third trial.

The brief then goes on to state the requirements to constitute adverse possession, its elements, and the lack of equities in favor of a person who seeks to acquire property of another by adverse user. Appellees seek a reversal and that judgment be rendered in their favor.

Notwithstanding any conflicting evidence, it became the duty of the trial court to resolve the facts as revealed by the evidence. The trial court accepted this responsibility and made its determination of the facts as it found them to be in the light of the evidence introduced for its consideration.

Appellees contend that the judgment should be revised and rendered for them confirming their superior title to the interest in the land at issue. They have briefed and rely on four supporting reasons for such action.

It is first claimed that the defendants conceded the superiority of plaintiffs' record title. In this third trial the defendants relied upon adverse possession, not record title, to the disputed area. With this premise in mind, there appears no occasion to elaborate on this issue.

Secondly, appellees urge that the defendants failed to prove, and trial court failed to find that the defendants' possession had been exclusive for fifteen years. In finding 23 the court found "(t)he camp building has been used by the defendants and their predecessors in title mostly as a fishing and hunting lodge."

By the above finding, the appellees take the view that the possession was a "now and then" affair, ripening into fifteen years only by the fiction of constructive possession.

■ Camps of this nature are usually occupied in the literal sense only during certain periods of the year. The occupancy needed only to be that consistent with the nature and character of the premises. As stated in the case of *Amey* v. *Hall*, 123 Vt. 62, 181 A.2d 69 (1962):

> "To constitute continuous possession of lands, the law does not require the occupant to be present on the site at all times. The kind and frequency of the acts of occupancy, necessary to constitute continuing possession, are dependent on the nature and condition of the premises as well as the uses to which it is adapted."

There may be lapses of time between acts of possession. *Aldrich* v. *Griffith*, 66 Vt. 390, 401, 403, 29 A. 376 (1893).

Plaintiffs urge that the court did not find that the defendants' occupancy and possession had been exclusive. By finding 26 the trial court determined that " . . . the defendants and their predecessors in title have possessed, occupied and used continuously, uninterruptedly, openly, notoriously, hostilely and under a claim of ownership for more than fifteen years prior to the commencement of this litigation" the premises in question.

Our rule for gaining title to land by adverse possession is that a possession that will work an ouster of the owner must be "open, notorious, hostile and continuous" through the statutory period of fifteen years to form the basis for title by adverse possession, 12 V.S.A. § 501. *Sabins* v. *McAllister*, 116 Vt. 302, 306, 76 A.2d 106 (1950). As stated in the *Sabins* case, *supra*, 116 Vt. at 306, "(t)he tenant must unfurl his flag on the land, and keep it flying so that the owner may see, if he will, that an enemy has invaded his dominion and planted his standard of conquest." This, in effect, is what the defendants and their predecessors did, and was so found by the court below.

Thirdly, appellees urge that the use of the claimed land for hunting and fishing, in view of the Constitutional provisions, required defendants to assert their claimed ownership to the superior title holders in strong and uncertain terms and the period of adverse possession did not commence to run until they did so.

To this end, appellees state that ordinarily the use of land for hunting and fishing is not sufficient to establish adverse possession. There is no occasion for us to question this statement. The foregoing is not applicable to the facts in this case.

The camp and outbuildings were erected on the premises and used as a base from which to hunt and fish. No doubt the camp was partly furnished for these purposes, and its occupancy can hardly be considered sporadic. The camp had remained on the property since it was built, at which time the occupant's flag was "unfurled". Vermont Constitution, Chapter II, Section 63 which relates to hunting, fowling and fishing has no application to defendants' claim of adverse user as evidenced by the facts in this case.

Lastly, in challenging the boundaries of the land, as determined by the court, appellees assert that difficulty arose in fixing the boundaries of the claimed land stems from the defendants' indefiniteness, uncertainty, and a conflict in their claims. All in all, what this contention amounts to is that the defendants have not proven their claim with precision and have left the courts to speculate as to the boundaries of defendants' premises. The weakness in the appellees' conten-

tion is that they have entirely failed to point out wherein and in what manner the lower court went astray.

It is well established law that findings of fact must stand if there is any credible evidence fairly and reasonably to support them. *Crawford* v. *Lumbermen's Mutual Casualty Co.*, 126 Vt. 12, 16, 220 A.2d 480 (1966) ; *Montgomery et al.* v. *Branon, et al.*, 127 Vt. 83, 87, 238 A.2d 650 (1968).

Viewing the record as a whole, we are convinced, and so hold, that the trial court was amply fortified by competent evidence in its determination of the boundaries of the land claimed adversely by the defendants. The judgment is adequately supported by the findings of fact.

The description in defendants' deed clearly provides for a right of way to and from the road and to and from Hinkum Pond. The same evidence which sustains the defendants' title, by adverse possession, to an undivided one-half interest in the land in question, requires a confirmation of their right of access to the dock and pond over the area used as a right of way. Thus, their title by adverse user carries with it the easement to the pond.

The judgment order is amended by adding at the end of the description of the property determined by the court to be adversely held by the defendants, the following sentence: "Also, including an undivided one-half interest in a right of way running to and from the access road to Hinkum Pond. (See Defendants' Exhibits C and D)"

*As thus amended, the judgment order is affirmed.*

**Chief Justice Holden** concurs in the result.

**Smith, J.,** took no part in the consideration of this appeal.