**Albert M. LYSAK v. Richard and Jeanne GRULL**

[812 A.2d 840]

No. 01-137

August 21, 2002. This appeal arises out of the consolidation of two separate petitions filed in the Probate Court for the District of Fair Haven, pursuant to 14 V.S.A. § 1801, seeking a determination of whether the Estate of Priscilla Watson, the record owner of a parcel of land on Lake Hortonia in Sudbury, Vermont,

possessed an existing enforceable interest on the property, and claiming that the separate petitioners had each established adverse possession on a portion of the parcel. On appeal from the probate court decision, the Rutland Superior Court found for the petitioners. We affirm.

The dispute in this case concerns three parcels of contiguous land, all owned at one time by James D. Watson and Priscilla Watson, which were bordered on the north by Vermont Route 144 and on the south by Lake Hortonia. In 1966, Priscilla Watson, then a widow, conveyed to one party a parcel on the western portion of the property. In 1971, she conveyed to another party a parcel on the eastern portion of the property. Between the two conveyed parcels lay a third parcel — the disputed parcel in this case. The disputed center parcel, roughly 46 by 150 feet, was never conveyed by Ms. Watson, likely because of a 1968 surveying error which left her unaware that such a parcel existed.

In time, both the eastern and western parcels were conveyed to Edgar and Marjorie Preseau. In 1982, the Preseaus conveyed the eastern parcel to petitioners Albert and Margaret Lysak and the western parcel to John Welch, who conveyed the property to petitioners Frederick Everson and Genevieve Zacek. Both the Lysaks and Everson and Zacek used the disputed center lot as an extension of their respective properties. In 1990, the neighbors agreed on a boundary line and erected a post and rail fence running diagonally from Route 144 to Lake Hortonia, cutting the disputed lot roughly in half.

In 1987, Richard and Jeanne Grull purchased a house on property across Route 144 from the disputed lot. At the time of the purchase, the Grulls learned from the Welches — the previous owners of the western parcel — about the center parcel. In June 1997, the Grulls, under the impression that the Preseaus owned the disputed lot, contacted the Preseaus and obtained a quitclaim deed from them.

In 1997, Everson, Zacek, and the Lysaks became aware of the Grulls' claim of ownership on the disputed parcel. In November 1997, they filed separate 14 V.S.A. § 1801 petitions, which were consolidated in the Probate Court for the District of Fair Haven, claiming that (1) the disputed parcel had never been conveyed by Priscilla Watson; (2) no probate proceedings for the estate of Priscilla Watson had ever been commenced in that county; (3) the heirs of Priscilla Watson were not known; and (4) the petitioners had individually been in open, notorious, hostile, and continuous possession of roughly one-half of the disputed lot for fifteen years — the Lysaks possessing the portion east of the fence and Everson and Zacek possessing the portion west of the fence.

The Grulls, respondents here, became a party to the consolidated action in the probate court, challenging the petitions and claiming ownership of the parcel. In January 1998, respondents, through their attorney, contacted James Watson, the grandson of Priscilla Watson, who executed a special quitclaim deed, conveying his interest in the disputed lot to respondents.

The probate court, in a June 1998 order, declared respondents' quitclaim deed void and found that petitioners had established adverse possession of each portion of the disputed lot. Respondents appealed to the Rutland Superior Court. The superior court consolidated this appeal with a case petitioners had filed in the superior court, following the probate court decision, seeking an injunction to keep respondents off the land. The superior court, in a February 2001 order, found that neither conveyance to respondents had legal effect, and therefore, record title to the disputed parcel still stood in the name of Priscilla Watson, subject to petitioners' adverse possession claims. The court further found that both

petitioners had established open, notorious, hostile, and continuous possession of each portion of the disputed parcel; directed the probate court to appoint an administrator of the Estate of Priscilla Watson; and ordered that the administrator convey the record title to petitioners. Respondents appealed.

On appeal, respondents argue that (1) the deed executed by James Watson to respondents conveyed his interest and legal title to the property and prevents the probate court from resolving title to the property under 14 V.S.A. § 1801; and (2) petitioners failed to establish open, notorious, hostile, and continuous possession for the full statutory period of fifteen years.

Respondents argue that the deed executed by James Watson, the heir of Priscilla Watson, conveying his interest in the disputed lot to respondents, effectively conveyed legal title to respondents. Legal title to real property vests immediately at death in the heirs, subject only to liens and legally enforceable debts of the estate. *In re Estate of Bettis*, 133 Vt. 310, 313, 340 A.2d 57, 59 (1975). At the time of death, the heir has a possibility coupled with a vested interest, a property right which the heir can sell or assign. *In re Callahan's Estate*, 115 Vt. 128, 135, 52 A.2d 880, 884 (1947). However, until such time as the estate is probated, and the debts of the estate are settled, the heir cannot demand either title to or possession of the property. *Id.*

By its enactment of 14 V.S.A. §§ 1801 and 1802, the Legislature has granted the probate court the statutory power to determine a question of title to real estate in "limited . . . special and specific factual circumstances." *In re Estate of Allen*, 129 Vt. 107, 110, 272 A.2d 130, 132 (1970). The probate court may exercise its jurisdiction when the title to real estate is in the name of a person who has been deceased for at least seven years, who has made no conveyance of such property during his or her lifetime, and whose interest in such real estate has not been administered in the probate court. *Id.*

Each of these circumstances is present in the instant case. Priscilla Watson had been deceased for over seven years, she had never conveyed the disputed lot during her lifetime, though no doubt by error, her estate had never been probated in Probate Court for the District of Fair Haven, and at the time the petition was filed no person claiming to be her heir had attempted to or effectively conveyed their interest in the disputed property. Therefore, the probate court had proper jurisdiction over the disputed property pursuant to 14 V.S.A. § 1801.

Although respondents argue that the special quitclaim deed executed by James Watson to the respondents in January 1998, several months after petitioners had filed in probate court claiming adverse possession of the disputed parcel, should defeat the jurisdiction of the probate court to determine title to real estate in this matter, the jurisdiction of the probate court continues if "the heirs of the deceased have made no conveyance of their interest in the real estate, *or if made, such conveyances are defective.*" *Estate of Allen*, 129 Vt. at 110, 272 A.2d at 132 (emphasis added). In upholding the determination of the probate court, the superior court concluded the quitclaim deed from James Watson to the respondents "was a defective conveyance and of no legal effect," noting that there was no evidence that the land in question was ever conveyed by Priscilla Watson to any other person nor was there ever any conveyance from a duly appointed personal representative of the Watson estate since it was never submitted to probate. Thus, having found the necessary facts specified in the statute to confer jurisdiction upon it, the probate court, in determination of whether there exists an enforceable title in a deceased person, her estate, or in her heirs, could find — as we have previously recognized — it neces-

sary and proper to address the matter of adverse possession. *Id.* at 112, 272 A.2d at 133.

Respondents' claim that petitioners have not established open, notorious, hostile, and continuous possession of the individual parcels for the full statutory period of fifteen years is without merit. We review an adverse possession claim as a mixed question of law and fact. *N.A.S. Holdings, Inc. v. Pafundi,* 169 Vt. 437, 438, 736 A.2d 780, 782 (1999). We review questions of law de novo. *Id.* at 438-39, 736 A.2d at 782. When reviewing factual findings, however, we take them in the light most favorable to the party prevailing below, disregarding any modifying evidence. *Id.* at 438, 736 A.2d at 782. We will not set aside the findings unless they are clearly erroneous; hence, findings supported by any credible evidence will stand. *Id.*; V.R.C.P. 52(a).

In order to earn title to property by adverse possession, each of the petitioners must establish open, notorious, hostile, and continuous possession of the property through the statutory period of fifteen years. *Lawrence v. Pelletier,* 154 Vt. 29, 33, 572 A.2d 936, 939 (1990); 12 V.S.A. § 501. The burden of proving adverse possession is on the parties claiming it. *Bemis v. Lamb,* 135 Vt. 618, 621, 383 A.2d 614, 617 (1978). Respondents' challenge to petitioners' adverse possession claims is essentially that each owner must establish the elements of adverse possession individually on each portion of the disputed lot that they claim to possess, that neither Everson and Zacek nor the Lysaks established possession for the full statutory period, and that the Lysaks' activities may never have amounted to open, notorious, or hostile possession. Petitioners, acting no differently than any record title owners, individually established open, notorious, hostile, and continuous possession of each side of the disputed lot: Everson and Zacek mowed and removed snow from the western half of the disputed lot; the Welches, before

Everson and Zacek, had also mowed the property, and had installed a fence, a driveway, trees, swings, a concrete slab, a garden, and an outdoor fireplace for grilling. Simultaneously, the Lysaks mowed and cared for the eastern portion of the disputed lot since taking possession, and the Preseaus, before the Lysaks, had installed a septic tank on their lot, using a portion of the disputed lot as a leachfield.

Moreover, both parties have established the required continuous possession period of fifteen years through the doctrine of tacking, where a party claiming adverse possession may add his period of possession to the possession of the previous owner in order to meet the statutory period. See *Deyrup v. Schmitt,* 132 Vt. 423, 425, 321 A.2d 42, 44 (1974) (tacking permits an adverse possessor "to add his period of possession to that of a prior adverse possessor"). The Lysaks, by tacking possession of the Preseaus, have established open, notorious, hostile, and continuous use, starting as early as 1978, with the use of the eastern portion of the disputed lot as a leachfield, and latest in the summer of 1982, when they took possession, with mowing and caring for the property. Everson and Zacek, by tacking possession of the Welches, established adverse use of the western portion of the disputed lot in 1982, starting with mowing and eventually paving, and installing hammocks, swings, and other yard accessories. Respondents argue that the building of the fence in 1990 was the first adverse use; however, the fence was merely a memorial of the boundaries of the disputed lot that the Lysaks had established much earlier with the Welches, and later with Everson and Zacek. See generally 16 R. Powell & M. Wolf, Powell on Real Property § 91.09[3], at 91-63 (2000) (fencing may be an *indication* of ongoing physical control necessary for adverse possession).

Finally, respondents argue that petitioners' possession came no earlier than

the late summer and early fall of 1982, and thus the use did not occur for the statutorily required period because the respondents had filed an initial 14 V.S.A. § 1801 petition in the probate court on August 5, 1997. This argument fails to account for respondents' later withdrawal of this petition, and petitioners' later filing of the petitions at issue in this appeal, in November of that same year. Accordingly, all actions which took place in the summer of 1982 meet the fifteen year statutory period.

*Affirmed.*