Old Railroad Bed, LLC v. Marcus, No. 283-8-10 Bncv (Hayes, J., Dec. 1, 2011)

[The text of this Vermont trial court opinion is unofficial.  It has been reformatted from the original.  The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

STATE OF VERMONT

SUPERIOR COURT                                                        CIVIL DIVISION
Bennington Unit                                                         Docket No. 283-8-10 Bncv

| | |
|---|---|
| Old Railroad Bed, LLC,<br>  Plaintiff,<br><br> v.<br><br>Ronald A. Marcus, Kristi Marcus,<br>Vernon West, Cathy Cushing,<br>Don Dykes, Eleanor Dykes, and<br>Bradford A. West,<br>  Defendants | |

## DECISION ON MOTION FOR SUMMARY JUDGMENT (ADVERSE POSSESSION)

This ejectment action arises out of a dispute over the ownership of a tract of land in

Manchester, Vermont.  The tract is a railroad bed formerly used by the Manchester, Dorset and

Granville Railroad (MD&G) to transport marble from Vermont to points south.  In the 1930's,

MD&G shut down its railroad operation, dissolved, and tore up its tracks.  Just before its

dissolution, MD&G conveyed the old railroad bed tract to its parent corporation, the Vermont

Marble Company in 1936.  In 1992, Vermont Marble Company merged into OMYA, Inc.  In 2009,

OMYA, Inc. conveyed the tract by quitclaim deed to the plaintiff, Old Railroad Bed, LLC.  The

defendants are landowners[1] whose land was adjacent to the MD&G railroad line when the line

was in use.  Plaintiff seeks the ejectment of the defendants from the land in question, and the

---

[1] The suit was originally filed against Ronald and Kristi Marcus only, but several adjacent landowners moved to intervene as defendants on October 6, 2010.  On November 1, 2010, the court granted the motion. See 7C Wright, Miller & Kane, Federal Practice and Procedure: Civil 3d § 1920 ("Unless conditions have been imposed, the intervenor is treated as if the intervenor were an original party and has equal standing with the original parties.").

defendants have filed counterclaims, seeking declaratory relief establishing their title to the land based on adverse possession.

Defendants claim that after MD&G tore up its tracks, their predecessors in interest put up post and wire fences that extended over and encompassed the railroad bed. Defendants have filed two motions for summary judgment, and a hearing was held on both motions on October 24, 2011. The first motion, based on a theory of extinguishment of right of way, was denied by written decision issued on November 9, 2011. The second motion, decided here, is based on a theory of adverse possession.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . referred to in the statements required by Rule 56(c)(2), show that there is no genuine issue as to any material fact and that any party is entitled to judgment as a matter of law." V.R.C.P. 56(c)(3). The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (citation omitted). The moving party "has the burden of proof, and the opposing party must be given the benefit of all reasonable doubts and inferences in determining whether a genuine issue of material fact exists." *Price v. Leland*, 149 Vt. 518, 521 (1988). Summary judgment is appropriate "where, after an adequate time for discovery, a party 'fails to make a showing sufficient to establish the existence of an element' essential to his case and on which he has the burden of proof at trial." *Poplaski v. Lamphere*, 152 Vt. 251, 254-55 (1989) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

The court derives the undisputed facts from the parties' statements of fact under V.R.C.P. 56(c)(2). Facts in the moving party's statement are deemed undisputed when supported by the record and not controverted by facts in the nonmoving party's statement that are supported by the record. See *Boulton v. CLD Consulting Eng'rs, Inc.*, 2003 VT 72, ¶ 29, 175 Vt. 413 (citing *Richart v. Jackson*, 171 Vt. 94, 97 (2000)).

Defendants claim that their predecessors in interest acquired title to the strip of land in 1951, after fifteen years of continuous adverse possession, and that the undisputed material facts demonstrate their adverse possession, and entitle them to judgment as a matter of law. To achieve title to land through adverse possession, a claimant must show that his use of the land was "open, notorious, hostile and continuous throughout the statutory period of fifteen years." *MacDonough-Webster Lodge No. 26 v. Wells*, 2003 VT 70, ¶ 24, 175 Vt. 382; see also 12 V.S.A. § 501; *Lysak v. Grull*, 174 Vt. 523, 526, 812 A.2d 840, 844 (2002) (mem.) ("In order to earn title to property by adverse possession, each of the petitioners must establish open, notorious, hostile, and continuous possession of the property through the statutory period of fifteen years."). The burden of proving adverse possession falls on the party claiming it. *Rueda v. Kuban*, 133 Vt. 584, 586 (1975).

Defendants assert that between 1934 and 1936, "the farmers between North Road and the Daley (sic) Gravel Pit enclosed their farms with post and wire fences that crossed over the old ROW and cut it up into segments along the property lines of those farms." Def. Mot. Summ. J. (Adverse Possession) 4. The purpose of the fencing, defendants claim, was to use the strip of land for "as fenced in pasture for cattle or as cultivated fields for hay, corn or other crops." *Id.* at 5. In the defendants' reply brief and at oral argument, the defendants began to refer to all of

3

the activities on the strip of land as "farming." However, the initial description in the motion for summary judgment contained the following detailed description of the activities in question:

> From 1938 to the late 70's or early 80's the old ROW and surrounding land was open and used for farming. The Beattie farm where the Dykes live was fenced in open land used for pasturing cattle. The West family has worked their farm from 1938 to the present. Exhibit 28 is pictures showing Brad West's family farming during the mid 1960's. The ROW and surrounding land is open farmland. For years before 1984, Brad West leased the Marcus property from Kristi' [sic] Marcus' grandfather, Allan Brown, and grew hay and corn where Ron and Kristi now pasture their horses. Brad grew potatoes in the old ROW on the Marcus property. Ron and Kristi have enclosed their pasture with wire fencing since 1989 and pastured their horses there.

*Id.* Clearly, the use of the land included both pasturing livestock and cultivating crops.

Under Vermont law, to achieve adverse possession one must "unfurl his flag on the land, and keep it flying so that the owner may see, if he will, that an enemy has invaded his dominions and planted his standard of conquest." *Laird Properties New England Land Syndicate v. Mad River Corp.*, 131 Vt. 268, 277 (1973). The act of fencing in a particular piece of property is not necessarily sufficient to constitute the unfurling of a flag on a piece of land so as to begin the period of adverse possession. In *First Congregational Church of Enosburg v. Manley*, 2008 VT 9, ¶19, 183 Vt. 574, the Supreme Court held that since the fencing of a piece of property was "done to contain animals and not to establish a boundary between the properties," it was insufficient to establish adverse possession. For a fence to establish adverse possession, it must be a boundary fence, and not merely a fence of convenience. See *Wells*, 2003 VT at ¶ 28 (citing *Hovendick v. Ruby,* 10 P.3d 1119, 1123 (Wyo. 2000)); see also *N.A.S. Holdings, Inc. v. Pafundi*, 169 Vt. 437, 441-42 (discussing ways to achieve "constructive possession" by marking boundaries on the land).

4

Defendants do not state in their motion that the purpose of the fencing was to establish a boundary; instead, they suggest that the fencing was erected either to delineate cultivated crop land or to contain livestock. If the facts established that <u>all</u> of the strip of land was actively used for cultivating crops for the fifteen-year period, this would be a closer case; instead, the facts seem to show that some land was used to grow crops, and that some land was used to pasture livestock. It is not clear whether either of these uses was continuous as to any portion of the land in question. The defendants' statement of facts does not clearly indicate what the intent of the fence was, and which, if any, of the adjoining property owners intended it to be a boundary fence and which were merely enclosing their farms to allow livestock to graze freely. The fencing alone, therefore, is insufficient to establish adverse possession as a matter of law.

Even assuming defendants' facts clearly establish that the adjoining property owners fenced in the strip of land in order to establish a boundary, there are disputed material facts with respect to other elements of adverse possession. In particular, the parties disagree over whether the use of the land was open and notorious, such that Vermont Marble (the record title holder from 1936-1951) would have been on notice of the use. To prove open and notorious use, defendants offer the testimony of Brad West, who has lived on one of the tracts of land abutting the old railroad bed since 1938, when he was five years old. Mr. West asserts that the use of the strip of land would have been obvious to any observers. Additionally, defendants state that "[t]he raised railroad bed was plowed down to grade on the Hadden

property," a change in the topography that would have been obvious to observers. Def. Statement of Undisputed Facts (Adverse Possession) 7.[2]

Plaintiff has offered no direct testimony from witnesses familiar with the property between 1936 and 1951, presumably because many such witnesses are now unavailable given the timing of defendants' adverse possession claim. Plaintiff does, however, point to several pieces of evidence in the record that tend to suggest that the use was not open and notorious. When OMYA commissioned an investigator, Robbo Holleran, to walk the strip of land in 1994, Mr. Holleran reported that the segment passing through the defendants' properties "does not show any trespass, is fairly easy to find in most places, and has an existing footpath either on it or alongside it through much of the way." Pl. Ex. 12; see also Pl. Ex. 11.[3] Two others, William Badger and Lee Krohn, who walked the strip of land around the same time period, also reported no evidence of open and obvious use. See Pl. Ex. 14-15. Similarly, when Old Railroad Bed LLC hired a surveyor, Larry Parks, to walk the strip of land in 2009, Mr. Parks did not report evidence of defendants' open and notorious use. Pl. Ex. 6-7. In addition, in 1992, the Beatties (predecessors in interest to defendants Don and Eleanor Dykes) sought and obtained from OMYA an easement over the strip of land. See Pl. Ex. 21. OMYA also granted an easement to a telephone company in 1999. See Pl. Ex. 30. While this evidence does not directly contradict Mr. West's claims about the use of the strip of land from 1936 to 1951, it does create a sufficient dispute over material fact to cause this issue to be inappropriate for resolution at the

---

[2] Defendants also state that "[t]he old ROW does not even exist anymore on the Dailey Gravel Pit property. Only a large hole in the ground remains." However, as the Dailey property is not involved in this suit, this evidence is not directly relevant as to the open and notorious use of *this* strip of land.

[3] Mr. Holleran did report that "[t]he section north of the North Road has many significant trespasses" and that "some of the neighbors . . . feel very strongly that the Marble Company has no ownership of this section and that they have full title to it." The record shows that the owners north of North Road are not parties to this case.

summary judgment stage.  Because of the factual disputes discussed above, the defendants' motion for summary judgment must be denied.[4]

ORDER

Defendants' Motion for Summary Judgment (Adverse Possession) (MPR #3), filed August 17, 2011, is **_denied_**.


Dated at Bennington, Vermont this 1st day of December, 2011.


_____
Katherine A. Hayes
Superior Court Judge

---

[4] Because there is a factual dispute as to the defendants' claims of adverse possession, the court need not reach the plaintiff's argument that adverse possession of the property is barred under 5 V.S.A. § 3425, because the plaintiff's predecessor in title was a railroad company.  The court also does not address the issue of laches, for the same reason.