2014 VT 109

# Michael Parker and Judith Parker v. David Potter and Susan Potter

[109 A.3d 406]

No. 13-263

Present: Reiber, C.J., Dooley, Skoglund and Crawford, JJ.,* and Burgess, J. (Ret.), Specially Assigned

Opinion Filed September 12, 2014

___

\* Justice Crawford was present for oral argument, but did not participate in this decision.

*Phyllis R. McCoy-Jacien,* Bomoseen, for Plaintiffs-Appellees.

*William J. Bloomer* of *Bloomer & Bloomer, P.C.,* Rutland, for Defendants-Appellants.

¶ 1. **Reiber, C.J.** Defendants appeal the Addison Superior Court's ruling in favor of plaintiffs on plaintiffs' adverse possession claim. Defendants argue that the court erred in determining (1) that plaintiffs' predecessors-in-title did not abandon the property when it was foreclosed on, and (2) that plaintiffs' evidence was sufficient to show adverse possession of both a knoll and parking area for the requisite fifteen-year period under 12 V.S.A. § 501. For the following reasons, we affirm the trial court.

¶ 2. This dispute involves the parties' neighboring plots of land in Leicester, Vermont. Plaintiffs claim that, through adverse possession, they acquired several strips of land adjacent to their property: a triangular area used for parking, a small grassy knoll, and a narrow strip of land on the eastern side of the roadway leading to plaintiffs' house. These disputed areas are located

within the large expanse of defendants' property. A dirt lane through the woods lies beyond the disputed areas to the south and is connected to the road leading to the properties.

¶ 3. The parties submitted the following evidence regarding the boundaries of the property. Plaintiffs' predecessor-in-title, Norma Jean Ryan (formerly Mrs. Peck), testified that she owned the area that is now the northern portion of plaintiffs' property from 1991 through 1998. Ms. Ryan testified that she and her former husband, Mr. Peck, had used the home as a weekend place prior to remodeling it into a year-round home and adding a two-car garage to the northern end of the house in 1996. Ms. Ryan testified that she and Mr. Peck used to park to the north of the house, but that they parked in front of the garage after the house was remodeled. She did not recall ever using the disputed areas of land, but testified that construction workers had parked to the south of the property during the remodeling and that she would not refute any assertions that she and her husband had used the disputed parking area. She also stated that she was unclear on the exact boundaries of the land, especially to the south of the property. Because Ms. Ryan testified by deposition, the trial court found it difficult to assess her credibility.

¶ 4. On the other hand, the court found credible a former neighbor's live testimony that Ms. Ryan and Mr. Peck, as well as their predecessors-in-title, had used the disputed parking area since 1987. Additionally, the trial court credited the testimony of a contractor hired to work on the house in 1996, who testified that he drove his skid steer in the disputed parking area daily for about two weeks while completing a new foundation for the house, and that he assumed that the parking area belonged to plaintiffs' predecessors-in-title. The contractor also testified that defendants' predecessor-in-title came by on more than one occasion and saw the contractor using the disputed parking area. Not once did the neighbor assert that the property was his or ask the contractor not to use the parking area.

¶ 5. Ms. Ryan testified that she moved out of the house in 1997. According to her testimony, her former husband remained living at the house until their divorce in June 1998. By July 1999, the property was in the process of foreclosure, and it was vacant. In mid-July 1999, a loan officer with First Brandon National Bank visited the property and observed that the furnishings had been removed from the house. Mr. Peck told the bank's attorney that

he had no objection to the bank shortening the redemption period on the foreclosure and taking over the property immediately. The bank took title through foreclosure in August 1999, and the property remained vacant until the Parkers purchased it December 1999. Based on this evidence, the trial court found that no one was living on the property between July and December 1999.

¶ 6. Plaintiffs have lived year-round on the property since purchasing it in December 1999. Plaintiffs viewed the property with the bank's realtor prior to completing the sale, and the realtor parked in the disputed parking area. Boulders that previously had been placed along the back edge of the parking area, as well as a walkway from the front door to the parking area, remained when plaintiffs bought the land. The trial court found that a former owner had left pallets on the grassy knoll, along with concrete forms and wheelbarrows on the southeast corner of the disputed area. In 2000, plaintiffs placed a park bench on the knoll and began to stack firewood there. In 2011, they cut down some small hemlock trees on the knoll to let in more sunlight. They also stored their boat on the knoll during this time.

¶ 7. In 2012, plaintiffs bought the adjoining southerly lot at a tax sale. In May of the same year, defendants purchased the large expanse of property adjacent to plaintiffs' property. Prior to closing on their property, defendants were aware that plaintiffs had asserted rights to some of the land, including the parking area and the knoll. Defendants went to the house with a surveyor, telling plaintiffs that they were planning on purchasing the neighboring property and that plaintiffs would have to stop using the parking area. On May 13, 2012, defendants moved plaintiffs' boat out of the parking area and put boulders and fencing up to block plaintiffs from using the area. This was the first challenge to plaintiffs' use of the disputed areas in the thirteen-plus years that they have owned the land.

¶ 8. Not long after, on May 22, 2012, plaintiffs filed suit to quiet title, claiming that they had title to the disputed land through adverse possession. After holding a hearing on June 27, 2012, the trial court ordered defendants to remove all barriers they had put up on and around the disputed area until the court ruled on the matter. A trial was held in April 2013, and the trial court ruled that plaintiffs had adversely possessed the parking area and the grassy knoll but not the eastern strip of land next to the roadway.

¶ 9. Defendants appeal the trial court's decision as to the parking and knoll areas, claiming that the court erred in determining (1) that plaintiffs' predecessors-in-title did not abandon the property; and (2) that there was sufficient evidence to establish plaintiffs' adverse possession of the knoll and parking area.

¶ 10. ■ First, we address defendants' claim that the property was abandoned during the period of vacancy from July to December 1999. Because plaintiffs have owned their property for less than fifteen years, they can establish adverse possession only by tacking the adverse usage of their predecessors-in-title. See *Deyrup v. Schmitt*, 132 Vt. 423, 425, 321 A.2d 42, 44 (1974) ("Tacking is that doctrine which permits an adverse possessor to add his period of possession to that of a prior adverse possessor in order to establish a continuous possession for the statutory period." (quotations omitted)). Defendants argue that plaintiffs' predecessors-in-title abandoned the property when it was foreclosed on, and therefore plaintiffs cannot establish the continuity element of their adverse possession claim.

¶ 11. The question of whether there was abandonment in this case contains the threshold legal issue of whether foreclosure amounts to abandonment and breaks the continuity of adverse possession as a matter of law. If this threshold question is answered in the negative, then the question becomes one of fact — whether the circumstances surrounding foreclosure in this case show that the possessors, plaintiffs' predecessors-in-title, abandoned the property. We review the trial court's legal conclusions de novo and its factual findings for clear error, viewing the court's factual findings "in the light most favorable to the prevailing party below." *First Congregational Church of Enosburg v. Manley*, 2008 VT 9, ¶ 12, 183 Vt. 574, 946 A.2d 830 (mem.).

¶ 12. ■ As an initial matter, we conclude, as the trial court did, that foreclosure does not constitute abandonment as a matter of law. Although our case law has not addressed this issue, courts in other jurisdictions have held that foreclosure does not, in itself, interrupt the continuity element of adverse possession. See, e.g., *Memphis & Little Rock R.R. v. Organ*, 55 S.W. 952, 954 (Ark. 1899) (holding that purchase of railroad company at foreclosure sale did not preclude claimants from tacking adverse possession to company's prior adverse possession); *Lively v. Wick*, 221 P.2d 374, 378 (Colo. 1950) (holding that mortgage foreclosures do not

terminate continuity element in adverse possession claims); *Lewis v. Idones*, 116 N.Y.S.2d 382, 383 (App. Div. 1952) (holding that mortgage foreclosure and claimant's subsequent purchase of property at foreclosure sale did not interrupt continuity of adverse possession).

¶ 13. ■ Instead, abandonment, like adverse possession, "is a mixed question of law and fact." *N.A.S. Holdings, Inc. v. Pafundi*, 169 Vt. 437, 438, 736 A.2d 780, 783 (1999). In addition to an adverse party's activity upon the land, the intent also matters. *Id.* at 443, 736 A.2d at 786 ("The kind and frequency of acts of occupancy [necessary to establish adverse possession] depend on the condition of the property, the uses to which it is adapted, and the intentions of the claimant."); *Barrell v. Renehan*, 114 Vt. 23, 29, 39 A.2d 330, 333 (1944) (holding that acts of possession need not be constant so long as adverse party's actions show intent of title ownership). The adverse party's intent as to continuity or abandonment may be demonstrated through her actions. *Barrell*, 114 Vt. at 30, 39 A.2d at 334. To establish continuity of possession, the adverse party's actions only need be consistent with the nature and character of the land and its adapted uses. See *Darling v. Ennis*, 138 Vt. 311, 313-14, 415 A.2d 228, 230 (1980) ("[C]ontinuous use is not synonymous with constant use. Continuity of use is merely such use as an average owner would make of the property, taking into account its nature and condition."); *Montgomery v. Branon*, 129 Vt. 379, 386, 278 A.2d 744, 748 (1971) ("The occupancy need[ ] only to be that consistent with the nature and character of the premises . . . as well as the uses to which it is adapted." (quotation omitted)).

¶ 14. Therefore, though the foreclosure did not interrupt the adverse possession as a matter of law, plaintiffs must nevertheless demonstrate that their predecessors' usage was continuous in order to prove their adverse possession claim. See *Lysak v. Grull*, 174 Vt. 523, 526, 812 A.2d 840, 844 (2002) (mem.) (discussing requirements of adverse possession and doctrine of tacking). Defendants argue that neither of plaintiffs' predecessors-in-interest, the Pecks, nor the bank that foreclosed on the property continuously used the disputed areas.

¶ 15. ■ We conclude that the continuity element of adverse possession was met here. As an initial matter, to constitute abandonment and thereby break the continuity of adverse posses-

sion, the possessor must have voluntarily intended to relinquish her claim of ownership. See *J.H. Silsby & Co. v. Kinsley*, 89 Vt. 263, 270-71, 273-74, 95 A. 634, 638, 639-40 (1915) (holding that predecessor to adverse party had voluntarily abandoned disputed area where predecessor never used, or even set foot on, disputed property and knew nothing about its boundaries). Here, the Pecks did not voluntarily abandon the property so much as the unfortunate circumstances surrounding their foreclosure forced them to leave. Moreover, depending on the circumstances, lapses of time between acts of possession may not necessarily constitute an abandonment of possession. See *Montgomery*, 129 Vt. at 386, 278 A.2d at 748 (holding that continuity was not broken by seasonal use of summer camp because, given the nature of the property, there could be "lapses of time between acts of possession"); *Barrell*, 114 Vt. at 30, 39 A.2d at 334 (concluding that adverse party established continuity element despite gaps in possession where adverse party took actions consistent with title ownership, including exhibiting deed and lot plans to title owner claiming ownership to disputed area, and maintaining land by plowing and mowing). In this case, although there was a short lapse in time between when Mr. Peck moved out and the bank took over the property in mid-July 1999, without more, this gap was insufficient to show that plaintiffs' predecessors intended to abandon the disputed areas that they otherwise continuously possessed.

¶ 16. As to the bank's ownership, the trial court determined that the period of vacancy from July to December 1999 did not interrupt the continuity of adverse possession because the bank did not relinquish its claim to the disputed areas. Rather, the bank intended to continue its possession by using areas beyond the surveyed boundaries during the foreclosure process, as evidenced by the continued existence of construction debris on the knoll and realtor's use of the parking area. Given the court's findings, which are supported by the record, we conclude that the bank's continued use of the disputed areas during the foreclosure was sufficient to establish that it adversely possessed the property during this period. Once plaintiffs moved onto the property, they resumed their predecessors' use of the disputed areas, consistent with their claim of ongoing adverse possession. See *Lysak*, 174 Vt. at 526, 812 A.2d at 844 (holding that adverse possession was established through tacking where multiple predecessors-in-interest had continuously made use of property by mowing,

paving, installing yard accessories, and building a fence). Therefore, we hold that plaintiffs established the continuity element of their adverse possession claim.

¶ 17. ■ Next, we address defendants' claims that plaintiffs did not establish that either plaintiffs or their predecessors-in-interest adversely possessed the knoll and parking areas. The trial court based its ruling on the following facts: that there were boulders around the parking area and a walkway between the house and the parking area at the time that plaintiffs bought the home; that no one, including defendants' predecessor-in-interest, ever expressed that the parking area or the knoll were not part of the plaintiffs' property; that the realtor parked in the parking area when showing the house; that the knoll was covered in construction debris; and that a neighbor and the contractor provided credible testimony that the prior owners used both areas as their own since at least 1987 for parking and storage purposes. Although Ms. Ryan testified that she did not have any recollection of using the disputed parking area, the trial court found testimony by other witnesses to be more credible, a determination soundly within the discretion of the trial court. See *Rogers v. Parrish*, 2007 VT 35, ¶ 28, 181 Vt. 485, 923 A.2d 607 ("[T]he trial court has considerable discretion to assess the credibility of witnesses and weigh the evidence, and we will not disturb its findings unless clearly erroneous."). Finally, the court concluded based on its site visit that the parking area would appear to be a part of plaintiffs' property to an average observer.

¶ 18. The court's factual findings demonstrate that plaintiffs and their predecessors adversely possessed both the parking area and the knoll. These findings were adequately supported by the record, and are not clearly erroneous.

*Affirmed.*