2014 VT 109




Parker v. Potter (2013-263)


 


2014 VT 109


 


[Filed 12-Sep-2014]


 


NOTICE:  This opinion is
subject to motions for reargument under V.R.A.P. 40 as well as formal revision
before publication in the Vermont Reports.  Readers are requested to
notify the Reporter of Decisions by email at: JUD.Reporter@state.vt.us or by
mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont
05609-0801, of any errors in order that corrections may be made before this
opinion goes to press.


 


 



 
 2014 VT 109

 

  



 
 No. 2013-263

 

  



 
 Michael Parker and Judith Parker

 

 
 
 Supreme Court

 

 
 
  

 

 
 
  

 

 
 
  

 

 
 
 On Appeal from

 

 
 
      v.

 

 
 
 Superior Court, Addison Unit,

 

 
 
  

 

 
 
 Civil Division

 

 
 
  

 

 
 
  

 

 
 
 David Potter and Susan Potter

 

 
 
 January Term, 2014

 

 
 
  

 

 
 
  

 

 
 
  

 

 
 
  

 

 
 
 Helen
 M. Toor, J.

 

 
 
  

 

 Phyllis R. McCoy-Jacien, Bomoseen, for Plaintiffs-Appellees.


 


William J. Bloomer of Bloomer &
Bloomer, P.C., Rutland, for Defendants-Appellants.


 


 


PRESENT:    Reiber,
C.J., Dooley, Skoglund and Crawford, JJ.,* and Burgess,
J. (Ret.),


                    
Specially Assigned


 


 


¶ 1.            
REIBER, C.J.   Defendants appeal the Addison Superior
Court’s ruling in favor of plaintiffs on plaintiffs’ adverse possession claim.
 Defendants argue that the court erred in determining (1) that plaintiffs’
predecessors-in-title did not abandon the property when it was foreclosed on,
and (2) that plaintiffs’ evidence was sufficient to show adverse possession of
both a knoll and parking area for the requisite fifteen-year period under 12
V.S.A. § 501.  For the following reasons, we affirm the trial court.


¶ 2.            
This dispute involves the parties’ neighboring plots of land in Leicester,
Vermont.  Plaintiffs claim that, through adverse possession, they acquired
several strips of land adjacent to their property: a triangular area used for
parking, a small grassy knoll, and a narrow strip of land on the eastern side
of the roadway leading to plaintiffs’ house.  These disputed areas are
located within the large expanse of defendants’ property.  A dirt lane
through the woods lies beyond the disputed areas to the south and is connected
to the road leading to the properties.


¶ 3.            
The parties submitted the following evidence regarding the boundaries of
the property.  Plaintiffs’ predecessor-in-title, Norma Jean Ryan (formerly
Mrs. Peck), testified that she owned the area that is now the northern portion
of plaintiffs’ property from 1991 through 1998.  Ms. Ryan testified that
she and her former husband, Mr. Peck, had used the home as a weekend place
prior to remodeling it into a year-round home and adding a two-car garage to
the northern end of the house in 1996.  Ms. Ryan testified that she and
Mr. Peck used to park to the north of the house, but that they parked in front
of the garage after the house was remodeled.  She did not recall ever
using the disputed areas of land, but testified that construction workers had
parked to the south of the property during the remodeling and that she would
not refute any assertions that she and her husband had used the disputed
parking area.  She also stated that she was unclear on the exact
boundaries of the land, especially to the south of the property.  Because
Ms. Ryan testified by deposition, the trial court found it difficult to assess
her credibility.


¶ 4.            
On the other hand, the court found credible a former neighbor’s live
testimony that Ms. Ryan and Mr. Peck, as well as their predecessors-in-title,
had used the disputed parking area since 1987.  Additionally, the trial
court credited the testimony of a contractor hired to work on the house in
1996, who testified that he drove his skid steer in the disputed parking area
daily for about two weeks while completing a new foundation for the house, and
that he assumed that the parking area belonged to plaintiffs’
predecessors-in-title.  The contractor also testified that defendants’
predecessor-in-title came by on more than one occasion and saw the contractor
using the disputed parking area.  Not once did the neighbor assert that
the property was his or ask the contractor not to use the parking area. 


¶ 5.            
Ms. Ryan testified that she moved out of the house in 1997.  According
to her testimony, her former husband remained living at the house until their
divorce in June 1998.  By July 1999, the property was in the process of
foreclosure, and it was vacant.  In mid-July 1999, a loan officer with
First Brandon National Bank visited the property and observed that the
furnishings had been removed from the house.  Mr. Peck told the bank’s
attorney that he had no objection to the bank shortening the redemption period
on the foreclosure and taking over the property immediately.  The bank
took title through foreclosure in August 1999, and the property remained vacant
until the Parkers purchased it December 1999.  Based on this evidence, the
trial court found that no one was living on the property between July and
December 1999.


¶ 6.            
Plaintiffs have lived year-round on the property since purchasing it in
December 1999.  Plaintiffs viewed the property with the bank’s realtor
prior to completing the sale, and the realtor parked in the disputed parking
area.  Boulders that previously had been placed along the back edge of the
parking area, as well as a walkway from the front door to the parking area,
remained when plaintiffs bought the land.  The trial court found that a
former owner had left pallets on the grassy knoll, along with concrete forms
and wheelbarrows on the southeast corner of the disputed area. In 2000,
plaintiffs placed a park bench on the knoll and began to stack firewood there.
 In 2011, they cut down some small hemlock trees on the knoll to let in
more sunlight.  They also stored their boat on the knoll during this time.



¶ 7.            
In 2012, plaintiffs bought the adjoining southerly lot at a tax
sale.  In May of the same year, defendants purchased the large expanse of
property adjacent to plaintiffs’ property.  Prior to closing on their
property, defendants were aware that plaintiffs had asserted rights to some of
the land, including the parking area and the knoll.  Defendants went to
the house with a surveyor, telling plaintiffs that they were planning on
purchasing the neighboring property and that plaintiffs would have to stop
using the parking area.  On May 13, 2012, defendants moved plaintiffs’
boat out of the parking area and put boulders and fencing up to block
plaintiffs from using the area.  This was the first challenge to
plaintiffs’ use of the disputed areas in the thirteen-plus years that they have
owned the land.


¶ 8.            
Not long after, on May 22, 2012, plaintiffs filed suit to quiet title,
claiming that they had title to the disputed land through adverse possession.
 After holding a hearing on June 27, 2012, the trial court ordered
defendants to remove all barriers they had put up on and around the disputed
area until the court ruled on the matter.  A trial was held in April 2013,
and the trial court ruled that plaintiffs had adversely possessed the parking
area and the grassy knoll but not the eastern strip of land next to the
roadway.


¶ 9.            
Defendants appeal the trial court’s decision as to the parking and knoll
areas, claiming that the court erred in determining (1) that plaintiffs’
predecessors-in-title did not abandon the property; and (2) that there was
sufficient evidence to establish plaintiffs’ adverse possession of the knoll
and parking area.


¶ 10.         First,
we address defendants’ claim that the property was abandoned during the period
of vacancy from July to December 1999.  Because plaintiffs have owned
their property for less than fifteen years, they can establish adverse
possession only by tacking the adverse usage of their
predecessors-in-title.  See Deyrup v.
Schmitt, 132 Vt. 423, 425, 321 A.2d 42, 44 (1974) (“Tacking is that
doctrine which permits an adverse possessor to add his period of possession to
that of a prior adverse possessor in order to establish a continuous possession
for the statutory period.” (quotations
omitted)).  Defendants argue that plaintiffs’ predecessors-in-title
abandoned the property when it was foreclosed on, and therefore plaintiffs
cannot establish the continuity element of their adverse possession claim.


¶ 11.         The
question of whether there was abandonment in this case contains the threshold
legal issue of whether foreclosure amounts to abandonment and breaks the
continuity of adverse possession as a matter of law.  If this threshold
question is answered in the negative, then the question becomes one of
fact—whether the circumstances surrounding foreclosure in this case show that
the possessors, plaintiffs’ predecessors-in-title, abandoned the
property.  We review the trial court’s legal conclusions de novo and its
factual findings for clear error, viewing the court’s factual findings “in the
light most favorable to the prevailing party below.”  First
Congregational Church of Enosburg v. Manley, 2008 VT 9, ¶ 12, 183 Vt. 574,
946 A.2d 830 (mem).


¶ 12.         As an
initial matter, we conclude, as the trial court did, that foreclosure does not
constitute abandonment as a matter of law.  Although our case law has not
addressed this issue, courts in other jurisdictions have held that foreclosure
does not, in itself, interrupt the continuity element of adverse
possession.  See, e.g., Memphis & Little Rock R.R. v. Organ, 55
S.W. 952, 954 (Ark. 1899) (holding that purchase of railroad company at
foreclosure sale did not preclude claimants from tacking adverse possession to
company’s prior adverse possession); Lively v. Wick, 221 P.2d 374, 378
(Colo. 1950) (holding that mortgage foreclosures do not terminate continuity
element in adverse possession claims); Lewis v. Idones,
116 N.Y.S.2d 382, 383 (App. Div. 1952) (holding that mortgage foreclosure and
claimant’s subsequent purchase of property at foreclosure sale did not
interrupt continuity of adverse possession).   


¶ 13.         Instead,
abandonment, like adverse possession, “is a mixed question of law and
fact.”  N.A.S. Holdings, Inc. v. Pafundi,
169 Vt. 437, 438, 736 A.2d 780, 783 (1999).  In addition to an
adverse party’s activity upon the land, the intent also matters.  Id.
at 443, 736 A.2d at 786 (“The kind and frequency of acts of occupancy
[necessary to establish adverse possession] depend on the condition of the
property, the uses to which it is adapted, and the intentions of the
claimant.”); Barrell v. Renehan,
114 Vt. 23, 29, 39 A.2d 330, 333 (1944) (holding that acts of possession need
not be constant so long as adverse party’s actions show intent of title
ownership).  The adverse party’s intent as to continuity or abandonment
may be demonstrated through her actions.  Barrell,
114 Vt. at 30, 39 A.2d at 334.  To establish
continuity of possession, the adverse party’s actions only need be consistent
with the nature and character of the land and its adapted uses.  See Darling
v. Ennis, 138 Vt. 311, 313-14, 415 A.2d 228, 230 (1980) (“[C]ontinuous use is not synonymous with constant use.
 Continuity of use is merely such use as an average owner would make of
the property, taking into account its nature and condition.”); Montgomery v.
Branon, 129 Vt. 379, 386, 278 A.2d 744, 748
(1971) (“The occupancy need[] only to be that
consistent with the nature and character of the premises . . . as
well as the uses to which it is adapted.” (quotation
omitted)). 


¶ 14.         Therefore,
though the foreclosure did not interrupt the adverse possession as a matter of
law, plaintiffs must nevertheless demonstrate that their predecessors’ usage
was continuous in order to prove their adverse possession claim.  See Lysak v. Grull, 174
Vt. 523, 526, 812 A.2d 840, 844 (2002) (mem.) (discussing requirements of adverse possession and doctrine
of tacking).  Defendants argue that neither of plaintiffs’
predecessors-in-interest, the Pecks, nor the bank that foreclosed on the
property continuously used the disputed areas.


¶ 15.         We
conclude that the continuity element of adverse possession was met here. 
As an initial matter, to constitute abandonment and thereby break the
continuity of adverse possession, the possessor must have voluntarily intended
to relinquish her claim of ownership.  See J.H. Silsby
& Co. v. Kinsley, 89 Vt. 263, 270-71, 273-74, 95 A. 634, 638, 639-40
(1915) (holding that predecessor to adverse party had voluntarily abandoned
disputed area where predecessor never used, or even set foot on, disputed
property and knew nothing about its boundaries).  Here, the Pecks did not
voluntarily abandon the property so much as the unfortunate circumstances
surrounding their foreclosure forced them to leave.  Moreover, depending
on the circumstances, lapses of time between acts of possession may not
necessarily constitute an abandonment of possession.  See Montgomery,
129 Vt. at 386, 278 A.2d at 748 (holding that continuity was not broken by
seasonal use of summer camp because, given the nature of the property, there
could be “lapses of time between acts of possession”); Barrell,
114 Vt. at 30, 39 A.2d at 334 (concluding that adverse party established
continuity element despite gaps in possession where adverse party took actions
consistent with title ownership, including exhibiting deed and lot plans to
title owner claiming ownership to disputed area, and maintaining land by
plowing and mowing).  In this case, although there was a short lapse in
time between when Mr. Peck moved out and the bank took over the property in
mid-July 1999, without more, this gap was insufficient to show that plaintiffs’
predecessors intended to abandon the disputed areas that they otherwise
continuously possessed.  


¶ 16.         As to
the bank’s ownership, the trial court determined that the period of vacancy
from July to December 1999 did not interrupt the continuity of adverse
possession because the bank did not relinquish its claim to the disputed
areas.  Rather, the bank intended to continue its possession by using
areas beyond the surveyed boundaries during the foreclosure process, as
evidenced by the continued existence of construction debris on the knoll and
realtor’s use of the parking area.  Given the court’s findings, which are
supported by the record, we conclude that the bank’s continued use of the disputed
areas during the foreclosure was sufficient to establish that it adversely
possessed the property during this period.  Once plaintiffs moved onto the
property, they resumed their predecessors’ use of the disputed areas,
consistent with their claim of ongoing adverse possession.  See Lysak, 174 Vt. at 526, 812
A.2d at 844 (holding that adverse possession was established through tacking
where multiple predecessors-in-interest had continuously made use of property
by mowing, paving, installing yard accessories, and building a fence). 
Therefore, we hold that plaintiffs established the continuity element of their
adverse possession claim.   


¶ 17.         Next,
we address defendants’ claims that plaintiffs did not establish that either
plaintiffs or their predecessors-in-interest adversely possessed the knoll and
parking areas.  The trial court based its ruling on the following facts:
that there were boulders around the parking area and a walkway between the
house and the parking area at the time that plaintiffs bought the home; that no
one, including defendants’ predecessor-in-interest, ever expressed that the
parking area or the knoll were not part of the plaintiffs’ property; that the
realtor parked in the parking area when showing the house; that the knoll was covered
in construction debris; and that a neighbor and the contractor provided
credible testimony that the prior owners used both areas as their own since at
least 1987 for parking and storage purposes.  Although Ms. Ryan testified
that she did not have any recollection of using the disputed parking area, the
trial court found testimony by other witnesses to be more credible, a
determination soundly within the discretion of the trial court.  See Rogers
v. Parrish, 2007 VT 35, ¶ 28, 181 Vt. 485, 923 A.2d 607 (“[T]he trial court
has considerable discretion to assess the credibility of witnesses and weigh
the evidence, and we will not disturb its findings unless clearly
erroneous.”).  Finally, the court concluded based on its site visit that
the parking area would appear to be a part of plaintiffs’ property to an
average observer.  


¶ 18.         The
court’s factual findings demonstrate that plaintiffs’ and their predecessors
adversely possessed both the parking area and the knoll.  These findings
were adequately supported by the record, and are not clearly erroneous.


Affirmed.


 


 



 
  

 

 
 
  

 

 
 
 FOR THE COURT:

 

 
 
  

 

 
 
  

 

 
 
  

 

 
 
  

 

 
 
  

 

 
 
  

 

 
 
  

 

 
 
  

 

 
 
  

 

 
 
  

 

 
 
  

 

 
 
 Chief
 Justice

 

  














*  Justice
Crawford was present for oral argument, but did not participate in this
decision.