*Aubin v. Morse*, No. 737-11-12 Wrcv (Teachout, J., October 1, 2014)

[The text of this Vermont trial court opinion is unofficial.  It has been reformatted from the original.  The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

## STATE OF VERMONT

| | |
|---|---|
| **SUPERIOR COURT** | **CIVIL DIVISION** |
| **Windsor Unit** | **Docket #737-11-12 Wrcv** |

**NORMAND L. AUBIN and**
**BETTY J. AUBIN**

  **v.**

**HOLLY MORSE and**
**DAVID MORSE**

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER

Plaintiffs and Defendants own neighboring properties on Tattle Street in the Town of Reading.  Each claims ownership of a disputed parcel of 11 acres of land that is located next to undisputed portions of both of their properties.

A site visit was taken prior to the beginning of the court trial.  A final hearing on the merits was held on July 23 and 24, 2014.  Amended Proposed Findings of Fact and Conclusions of Law were filed thereafter.  Plaintiffs are represented by Attorney Jonathan Springer.  Defendants are represented by Attorneys Amanda T. Rundle and Christopher M. Rundle.

Based on the credible evidence, the Court makes the following Findings of Fact and Conclusions of Law.

### Findings of Fact

In 1985, Defendant Holly Morse and her then-husband bought a property on the west side of Tattle Street.  It was described in the deed only by references to prior conveyances, without a physical description, and was said to contain 65 acres.  She has lived there ever since and has raised her family and engaged in logging, sugaring, and multiple outdoor activities on the property with her children and her current husband Defendant David Morse.  In 2002, Plaintiffs Norman and Betty Aubin bought the neighboring property to the north, and have lived there since.  Their deed restated a physical description from a prior deed in the chain of title.  It did not include an amount of acreage.  Plaintiffs believed they were buying a parcel of 10 acres.

1

Both parties' properties have residences located fairly near Tattle Street and both have wooded acreage that extends back away from the road. Behind both their properties is a vast tract of 1500 acres belonging to the State of Vermont. The State land and the wooden acreage behind their homes is remote and not frequented except by hunters, hikers, snowshoers, and others who pursue activities in remote woodlands.

Neither the Plaintiffs nor the Defendants have, or have ever had, a completed survey of the properties they own, or at least they did not offer any surveys into evidence. Both have had survey work done on the disputed parcel.

In November of 1984, the property that is now owned by the Aubins was deeded by Kenneth and Rachel Watkins to Lawrence McLiverty and Terri Satterlee. The Watkinses had acquired it in 1950 as part of a larger tract and had previously conveyed some of what they had acquired. The deed to McLiverty and Sattterlee is at the heart of the dispute in this case. The relevant portion of the description reads as follows:

> Beginning at a point in the west side of Tattle Street, so-called, at the end of a stone wall which marks the south boundary of Julie Ellis' property; thence proceeding in a westerly direction approximately 1114 feet to a pile of stones and painted trees marking State of Vermont land; thence along the east boundary of the State of Vermont land approximately 628 feet to another stone wall with a pile of stones and painted trees, and land of Dr. Braun; thence easterly along said stone wall approximately 1236 feet to the west side of Tattle Street; thence along the west side of Tattle Street approximately 828 feet to the point of beginning.

> Meaning and intending to convey all of the remaining property owned by the Grantors on the west side of Tattle Street.

In early 1985, only a few months after the Watkins' deed to McLiverty and Satterlee, Ms. Morse first looked at the parcel she and her husband bought. The property was owned by Samuel J. Braun and Sarah K. Braun of Newton Centre, Massachusetts. Rachel and Kenneth Watkins were the realtors and showed her the property from the road, indicating in a general way that the land went back from the road to land of the State of Vermont. Prior to closing on the purchase, Ms. Morse walked to one spot on the property with Rachel Watkins, who pointed in a general direction to the northwest and said that that was where the State land was.

Ms. Morse and her then husband acquired the property in March of 1985. The Brauns had owned it for five years. The property had previously been owned by Kenneth Watkins individually from 1946 to 1949. Rachel Watkins had not been an owner of any portion of the parcel Kenneth had owned. In 1949, Kenneth

2

Watkins individually conveyed it to grantees named Pearsons. There was no metes and bounds description. The relevant parcel is described as follows:

> Being part of the premises that was conveyed to me by Clark A. Ritchie by his warranty deed dated December 30, 1946 and recorded in Book 32 on Page 200 of Reading Land Records. The land hereby conveyed comprises all the land that I now own that is situated on the westerly side of the highway leading southerly from the residence. . . except about thirty-two acres described as follows: . . .[specific metes and bounds description].

In other words, Kenneth Watkins individually owned a parcel starting in 1946, from which the Morse parcel was conveyed out in 1949. When he conveyed it to Ms. Morse's predecessor Pearsons in 1949, Kenneth Watkins conveyed all of the remaining land he owned on the west side of Tattle Street except for a specifically described 32-acre piece not relevant here. A year later, in 1950, he and his wife Rachel Watkins acquired a different parcel to the north, and this was the parcel from which the Aubin parcel came. When they conveyed it to the Aubins' predecessor McLiverty and Satterlee in 1985, they conveyed all of the remaining land they then owned on the west side of Tattle Street.

In 1987 Ms. Morse was divorced and she became sole owner of the Morse property. During her years of ownership, Ms. Morse and her family have explored their own land and surrounding land and discovered an embankment or ridge that angled to the northwest near what was probably the north side of her property back away from the road. Based on this topographical feature together with the realtor's arm gesture and the direction of a stone wall that angled away from the road for several hundred feet at roughly the same angle as the bank and the fact that a rudimentary road appeared to follow the contour of the embankment, she concluded that the embankment might represent her boundary with State land.

In 1988, David Morse, who later became Ms. Morse's husband, moved to the property. In 1989 he began sugaring on the property. Between 1996 and 1999, he expanded the sugaring operation. Ms. Morse had logging done on her property in the 1990s, but not in the disputed area. She and family members hiked, picked berries, had picnics, and camped throughout the general area, including into the disputed area and onto State land. David Morse crossed the disputed area (not then identified as such) while going to the State land to hunt. Hikers using State land, which can be accessed from Tyson Road, have also walked through the disputed area.

When Ms. Morse moved to her property in 1985, her neighbor to the north, and precedessor in title to the Aubins, was Terri Satterlee. They became friends. In 1995, Ms. Satterlee acquired Mr. McLiverty's interest in her property and became sole owner.

When Ms. Satterlee was getting ready to sell her property, some time prior to 1997, she contacted Ms. Morse and the two of them walked through the woods to try to locate the back line of her property. Ms. Morse told Ms. Satterlee where she thought it was: along a line that is now the easterly limit of the disputed 11 acres. Along this line are some remnants of an old barbed wire fence. Both Ms. Morse and Ms. Satterlee believed that Ms. Satterlee's parcel abutted State of Vermont land at the back.

In 1997, Ms. Satterlee sold her parcel to Donald and Diane Cappuccino. The deed carried forth the description that had been included in the deed from Kenneth and Rachel Watkins to McLiverty and Satterlee.

In the year 2000, the Town of Reading decided to create a property tax map for the first time. The Town hired a surveyor, Gordon Tuthill, to review town records and create a comprehensive map to ensure that property taxes were collected from all properties in the town. At about this same time, Mr. Morse expanded his sugaring operation again, and some additional taps were placed in what is now the disputed area. Of the total of 550-600 taps, approximately 20-30 were probably on the disputed parcel, although this is not an exact number since the locations of boundaries were not known and had not yet become an issue.

In 2002, Plaintiffs purchased their property from the Cappuccinos. The deed carried forward the description that had been in the deed from Kenneth and Rachel Watkins to McLiverty and Satterlee.

The Town's surveyor apparently concluded that the 11 acres disputed in this case was part of Ms. Morse's parcel and he assigned ownership to her and drew the tax map accordingly. The basis of his conclusion is unknown, as he was not called as a witness at trial. The Reading Listers stated in a 2005 letter to Ms. Morse that their reason for assigning the additional acreage to her was that the "remainder" of the Watkins property was conveyed to her without a metes and bounds description. As a result of the addition of this acreage to her parcel and its inclusion on the tax map, Ms. Morse received an assessment for tax purposes in 2003 showing ownership of 89.05 acres instead of the 62 acres she believed she owned. (The 89.05 acres also includes other "new" land acreage that is not part of the 11 acres in dispute in this case.)

At first she was upset with the significant increase in her property tax bill, and she grieved the assessment. After reviewing records with the listers and the Town's surveyor, she changed her mind and began to assert ownership. She paid the property taxes on the land and began to use it more actively. Her son started creating trails through the disputed area. The family established a fire pit at one particular location at a high elevation with a good view.

In 2005, Ms. Morse contacted forester Rob Holleran to create a forest management and logging plan in conjunction with putting a portion of her property,

4

including the newly claimed 11 acres, into current use. Rob Holleran approached the Plaintiffs concerning the location of boundaries. It was from him that the Plaintiffs learned that there was a question about ownership of the disputed 11 acres. Ms. Aubin went to the Town offices and collected deeds and investigated the issue. She contacted the Morses to arrange a meeting to discuss the issue, and one was held at the Morse home. It was attended by the Aubins, the Morses, Ms. Morse's son Richard, and forester Rob Holleran.

Testimony differed about the purpose and content of communication at the meeting. Plaintiffs claim that it was an initial discussion to review the fact that the ownership of the disputed parcel was at issue. They testified that they said at the meeting that they did not agree that Ms. Morse owned it. The Morses deny that this is what occurred at the meeting. They claim that they were simply informing the Plaintiffs in a neighborly way of the fact that they were going to be doing logging on their property. The Court finds that the Plaintiffs are more credible about the purpose of this meeting and what was said at it. The Court finds that the Aubins were alerted to the discovery of the issue of who owned land previously believed to be owned by the State as a result of the contact from the forester, and they were following up to clarify the situation. At the meeting, Ms. Morse strongly asserted ownership based on the results of the Town tax determination.

Nothing conclusive happened as a result of the meeting, and Ms. Morse, on the strength of the Town tax map and the fact that she was paying property taxes, proceeded to put the disputed parcel into current use and log it, which included creating a logging road through it.

The other important event of 2005 was that the State had its boundaries surveyed, and had corner markers placed on the ground at two points marking its eastern boundary corners. It was this act that clarified on the ground the eastern boundary of the State land behind the Aubins and to the northwest of Ms. Morse's property. The result clarified that ownership of the 11 acre parcel was disputed, as it had previously been believed to belong to the State, but did not, and there were no other claimants.

Plaintiffs claimed they owned it based on the description in their deed that references the State land as their back boundary and carries forward a prior deed reference that conveyed all remaining land on the west side of Tattle Street. Defendants claimed it primarily in reliance on the conclusion of the Town surveyor and the resulting tax map. They also claimed that Plaintiffs' deed conveyed only 10 acres to a back line that they say is marked on the ground by stones and barbed wire. Defendants now claim in the alternative that they acquired the portion south of the embankment by adverse possession.

The Morses continued to actively use and claim ownership of the disputed parcel. In 2006 Ms. Morse's son built a cabin on it at the site of the fire pit. The Plaintiffs observed the Morses' continuing claim of ownership through logging,

5

sugaring, making trails and building the cabin. They took no overt action to assert an ownership claim. They testified at trial that at that time they did not have the money to do so.

In 2011, Plaintiffs hired a surveyor, who went to the property, and put surveyor's tape in a few locations in connection with his work. Plaintiffs concluded that they owned the disputed parcel. On June 29, 2011, Rachel Watkins executed a quitclaim deed in which she quitclaimed to the Aubins any remaining interest she may have had in the parcel she and her husband Kenneth (by then deceased) had acquired in 1950. Plaintiffs went to the cabin, which was unlocked, and went inside and looked around. It is disputed whether they moved anything, but they did not destroy or take anything away. Mr. Aubin padlocked the cabin. He claims that it was to prevent vandalism but it is more likely an act of assertion of ownership of the land. Plaintiffs' attorney attempted to contact Ms. Morse by letter and by telephone. She did not respond.

Ms. Morse put up no trespassing signs on the cabin and at other locations on the disputed parcel. Mr. Aubin took down some of the signs and marked up others, changing the name of the owner to his own name. Mr. Aubin also took out at least one sugaring tap and tossed it on the ground off the disputed parcel. Ms. Morse put up more signs. Defendants claim that items they had at the cabin were moved around, and that they no longer felt secure using the cabin, and stopped doing so. They claim actual losses of $300 for the damage to the cabin from the padlock and destroyed sugaring taps and signs.

The ownership dispute had become active. Ms. Morse consulted a surveyor, who has done some work, but the survey is "not complete yet" as a result of "confusion."

Around this time, there were two encounters between Mr. Aubin and Mr. Morse, one that occurred by chance at a saw mill and another that occurred on the property when both happened to be at the same place at the same time. Defendants claim that Plaintiffs were harassing and threatening them. Mr. Aubin testified that at the saw mill when he spoke to Mr. Morse, he was referring to the fact that they had an unresolved legal dispute and should let the court decide, and when he spoke to Mr. Morse on the property he was describing that he found a compromise proposal for settlement that was under discussion to be unacceptable. The Court finds Mr. Aubin's testimony on these points credible.

The Court finds that Mr. Aubin did not engage in hostile or threatening behavior. There was a significant unresolved legal issue between them and both were defending their positions. Communication was awkward and Mr. Morse was defensive about his wife's claim of ownership. In any event, the Court does not find that Mr. Aubin acted with malice or engaged in unreasonable behavior on these two occasions. In addition, while Mr. Aubin may have observed the Morses carrying out activities on the disputed parcel, such as logging, at other times, the Court does not

6

find that he engaged in harrassing behavior of the kind attributed to him by Defendants. The parties' encounters were full of tension, but the fact that such tension existed does not mean that another party was acting with malice.

This suit was filed in 2012 to resolve the ownership dispute. No surveyor or expert on land records research testified for any party. Several pertinent deeds were admitted into evidence. There was no testimony about the history of the conveyances of parcels in the area from any point of historical common ownership between the Morse, Aubin, and disputed parcels forward, and not all deeds covering this period were introduced into evidence.

The cabin was constructed so that it is capable of being moved, although it would be difficult.

## Conclusions of Law

The Court concludes that prior to 2003, neither the Plaintiffs nor the Defendants knew where their common boundaries with the State of Vermont were in relation to the disputed 11 acre parcel.[1] Both believed that their properties bordered lands owned by the State of Vermont (at the back of Aubins and at the northwest corner of Morses), but they did not know where the boundaries were. Plaintiffs believed they owned 10 acres, and Defendants believed they owned 62 acres. They did not know that there was a physical parcel of 11 acres that was not claimed by the State and was unaccounted for in relation to property taxation of land in the town.

The fact that the Town surveyor reached a conclusion that favored Ms. Morse when it came to allocating ownership for purposes of property taxation of otherwise unclaimed land has no legal effect. That was Mr. Tuthill's opinion, reached in a different context for a different purpose. Neither he nor any other surveyor or land records professional testified as to the content and interpretation of all of the deeds in the chains of title to both properties. Both parties seek a declaration of ownership of the disputed 11 acre parcel. The State of Vermont apparently does not claim it and there is no evidence that any other party claims ownership of it. The Court is left with determining whether either party has met its burden of proof on the basis of the evidence that was admitted at trial.

---

[1] Ms. Morse knew where her common boundary with the State of Vermont was with respect to a different portion of her property, but not where it was along the western portion of her northern property line. Although she had reached a conclusion about where she thought it was, she did not actually know.

*Plaintiffs' Claim of Ownership by Deed*

The property description in Plaintiffs' deed carries forward the description from the Kenneth and Rachel Watkins-to-McLiverty/Satterlee deed that first created the Plaintiffs' parcel in its current configuration. The description references monuments, courses and distances, and the State of Vermont boundary, and the references cannot be reconciled with each other now that the State has clarified and marked its eastern boundary. The distances included in the description from Tattle Street to the back line do not coordinate with the location of the State of Vermont boundary as claimed by the State and undisputed by the parties. Therefore, the Court is obliged to apply rules of construction of deeds in order to resolve the discrepancy and determine what property was conveyed by the deed.

"It is . . . a rule of construction that in a conflict between courses and distances, and known boundaries and monuments, courses and distances must yield." *Rambeau v. Barrows*, 127 Vt. 550, 554 (1969). Applying this rule of construction, the most reasonable reading of the deed description is that the property described was bounded on the back side by property of the State of Vermont. Even though the State boundary was not physically marked with visible markers such as blazes on trees or a fence, the boundary was ascertainable as the 2005 survey shows. It was marked on the ground in 2005 at a location that neither party has disputed. The property described in the Watkins-to-McLiverty/Satterlee deed thus goes back to the State of Vermont eastern boundary line despite any contrary courses and distances.

Defendants' claim is apparently that the 11 acres was included in Kenneth Watkins's remaining property that was deeded to the Pearsons in 1949, but Defendants introduced no credible evidence in support of that proposition.

Defendant Ms. Morse's evidence of location of boundaries of land conveyed in her deed based on having been shown the boundaries by Rachel Watkins does not overcome the specific deed description. Ms. Morse was not shown physical locations of boundaries on the ground accompanied by representations that those were the actual boundaries of the parcel Ms. Morse was considering purchasing. The realtor's wave of the arm in a general direction is not a sufficient basis for establishing boundaries. Moreover, for 18 years she believed she only owned 62 acres, and thus was not claiming that her property description included the 11 disputed acres. When first assessed on additional land, she objected to it. Her evidence that the boundaries of her parcel included the disputed parcel from the time of acquisition is not credible.

Plaintiffs' evidence meets the burden of proof of ownership of the 11 acres in that Plaintiff's evidence that the 11 acres was conveyed to McLiverty and Satterlee, and further conveyed to successors when the description was carried forward in the deeds that included the deed to Plaintiffs, is more credible and more fully supported

8

than the proposition that was apparently the basis of the Town surveyor's conclusion. Any opinion the Town surveyor had was not part of the evidence presented at trial. The proposition that the Kenneth Watkins-to-Pearsons 1949 deed included the disputed 11 acres was not supported at trial with evidence.

*Defendant's Claim of Ownership by Adverse Possession*

Adverse possession may be established by "an ouster of the owner [that is] 'open, notorious, hostile and continuous' through the statutory period of fifteen years." *Montgomery v. Branon*, 129 Vt. 379, 387 (1971); see also 12 V.S.A. § 501. The "tenant must unfurl his flag on the land, and keep it flying so that the owner may see, if he will, that an enemy has invaded his dominion and planted his standard of conquest." *Sabins v. McAllister*, 116 Vt. 302, 306 (1950), quoted in *Montgomery*, 129 Vt. at 387. The burden of proof rests with the party claiming it, here, the Morses. See *Higgins v. Ringwig*, 128 Vt. 534, 538 (1970).

The evidence is clear that the Defendants have carried on activities in the disputed parcel including sugaring, logging, hiking, making trails, having picnics and campfires, berry picking, and camping. Most of these activities were in the area south of the embankment. However, the evidence does not establish that the Defendants ever claimed the entire disputed area, or even the triangular portion of it south of the embankment or ridge, *to the exclusion of others*. See *Patch v. Baird*, 140 Vt. 60, 64 (1981) ("'Exclusion,' in the ordinary case of adverse possession, relates to challenging the owner's right to use the land at all, and is evidenced by enclosing or fencing the land, for example, or preventing the fee owner from going on or using the land.") Even after the tax year 2003-2004 they did not "unfurl their flag" and claim dominion to the exclusion of all others, and they have certainly not done so for the requisite 15-year period required to establish ownership by adverse possession.

The claim of an adverse possessor must be one that excludes all others and be hostile to the title owner. Most of the Morse activities did not exclude others. Rather, hiking, snowshoeing, picnicking, berry picking and having campfires and even camping are typical of uses that others would make in the State lands and adjacent woodlands where boundaries are not marked. Sugaring, logging, and making the cabin were both insufficient to encompass the whole area claimed, as there was no attempt by Defendants to lay claim to the 11 acres by marking boundaries for a period of 15 years. The period of such uses, including payment of taxes, fell far short of the necessary 15 years for adverse possession. Defendants have not proved a claim of ownership of either the whole or a part of the 11 acres by adverse possession.

*Defendants' Claim of Trespass*

Plaintiffs did trespass into Defendants' property by padlocking the cabin and thereby excluding Defendants from a building that was the property of the

Defendants and not the Plaintiffs, despite its location on land now declared to be owned by Plaintiffs. A trespass is an entry onto land in the possession of the other. Restatement (Second) of Torts § 158(a). Possession mean "occupancy of land with intent to control it." *Id.* § 157(a). This is so even if the other is not entitled by law to possession. *Id.* § 157 cmt. b. Defendants claim damages of $300 for this trespass and for the destruction of sugaring taps and line, and this is a reasonable amount under the circumstances, whether considered as compensation for actual damages or nominal damages. Defendants are entitled to damages of $300.00.

*Defendants' Claim for Punitive Damages*

Punitive damages require a showing of "conduct that is outrageously reprehensible" and malice. *Fly Fish Vermont, Inc. v. Chapin Hill Estates, Inc.*, 2010 VT 33, ¶ 18, 187 Vt. 541. Malice means "bad motive, ill will, personal spite or hatred, reckless disregard, and the like." *Id.* As described in the Findings of Fact, the conduct and communications of the Plaintiffs amounted to attempts to assert and defend an ownership interest in land in a situation in which there was a legitimate dispute. Plaintiffs had a legal claim that was as legitimate as Defendants, in spite of the Town's position, and Defendants were acting as if Plaintiffs' claim did not exist. Plaintiffs' conduct in asserting the claim orally and defending it on the ground was not as aggressive in character as Defendants' was. The conduct was not outrageously reprehensible and did not show the kind of malice that is compensable in the form of punitive damages.

*Defendants' Claim for Slander of Title*

Defendants claim that Plaintiffs slandered their title by recording a quitclaim deed from Rachel Watkins. The claim has not been proved. As a result of this decision, Plaintiffs hold title to the disputed acreage. One must actually have title to claim that another slandered it.

*Defendants' Claim for Compensation for Property Taxes Paid*

After initially objecting to paying property taxes on the 11 acres in 2003, Defendants voluntarily undertook to pay taxes on the disputed land. Taxes are an annual levy to support town services for the current year. During those years the Defendants enjoyed all of the benefits of ownership, including having logged the land and having obtained the benefits of the current use value assessment program. Property taxes were the "carrying cost" for having done so. Defendants' claim for compensation for property taxes paid is denied.

*Disposition of the Cabin*

It is undisputed that the cabin was made by and is the property of the Defendants, and that it is moveable. The Defendants shall have a period of 30 days from the date the judgment becomes final to remove the cabin and all contents and

10

related personal property from the 11-acre parcel.  Failure to do so shall constitute abandonment and waiver of any claim of ownership, and Plaintiffs shall have the right to claim  and use or dispose of the cabin, if it is still there, and any remaining personal property at their discretion.

## Order

Plaintiffs' counsel shall prepare a Judgment consistent with these Findings and Conclusions.  Defendants shall have five days to file any objections to form.


Dated  this     day of September, 2014.


_____
Hon. Mary Miles Teachout
Superior Judge

11